OPINION OF THE COURT
Richard Lee Price, J.
The defendant was accused of a number of counts of rape, sodomy and sexual abuse, all allegedly committed against his six-year-old daughter, Veronica Rivera. The District Attorney made an application to have the child witness declared a vulnerable witness pursuant to CPL article 65, and pursuant to that same article have this court order that she be permit *1032 ted to testify by way of a "two-way” closed-circuit television setup. The motion was opposed by defendant’s counsel on factual and constitutional grounds. The motion was decided on the record and this opinion follows to elaborate on and further analyze these important issues.
I observed the child and make the following findings of fact and law:
The child was testifying in open court in the presence of all parties and the jury, when she suddenly stopped and refused to answer any more questions. She claimed that she was "tired” and was not able to answer. When she was pressed as to why she could not answer, she repeated that she was tired and could not answer.
While testifying, she was facing the jury and the prosecutor. Her demeanor, however, indicated to the court that she was not tired and that something else was disturbing her and preventing her from answering the questions.
Thereafter, the jury was removed and the questioning was continued in open court. The child continued to refuse to answer questions and, in addition, stated to me that she was scared of the defendant and scared to testify in front of the jury and the defendant. She refused to state the basis for such fears; however, she clung to that position even after being reassured that the defendant would not be able to approach her for any purpose, even to speak directly to her. Nevertheless, I also observed her fear which was reflected in her facial expressions.
After the luncheon recess, a further attempt was made to have her testify in open court in the presence of the defendant but in the absence of the jury. That, too, proved fruitless, and she continued to express her fear of the defendant both verbally and physically.
Under mild, persistent questioning, the child’s responses appeared to become less verbal; and she seemed to respond more and more by way of nodding her head yes or no. In addition, she seemed to "scrunch” up and withdraw into herself.
Thereafter, the child was removed to the robing room and questioned further in the presence of the court and its associates, personnel, and the prosecutor, defense counsel and another Assistant District Attorney who had previously handled this matter. Again, she refused to answer questions if the *1033 defendant and/or the jury was present; and she again indicated that she was frightened by the defendant.
I note that the defendant is her father, an authority figure, and that the manner of the commission of the offenses of which the defendant was accused is particularly heinous. Further, the crimes themselves are among the most ancient of offenses known to humankind.
I, therefore, find that this child can and ought to be declared a vulnerable witness. Her reaction to the questioning clearly shows that if pressured and forced to answer questions, she will face mental stress severe enough to cause her to suffer significant and severe psychological damage and/or emotional harm.
Further, I find that the stress of answering the questions has already caused her severe emotional and physical harm as evidenced by her reactions in open court; and, therefore, she is physically unable to continue to testify in open court.
I, therefore, find that this child is a vulnerable child witness as described and defined in CPL 65.20 (10).
I further find, based on the aforementioned observations, that placing this child in the same room as the defendant would contribute to the likelihood that the child will further suffer severe mental and/or emotional harm.
I, therefore, direct that the defendant remain in the courtroom and the child be permitted to testify from another location via a live "two-way” closed-circuit television pursuant to the provisions of CPL 65.30.
CPL 65.30 states, in relevant part:
"1. When the court has entered an order pursuant to section 65.20, the testimony of the vulnerable child witness shall be taken in the testimonial room and the image and voice of the vulnerable child witness, as well as the image of all other persons other than the operator present in the testimonial room, shall be transmitted live by means of closed circuit television to the courtroom. The courtroom shall be equipped with monitors sufficient to permit the judge, jury, defendant and attorneys to observe the demeanor of the vulnerable child witness during his or her testimony * * *.
"2. In all instances, the image of the jury shall be simultaneously transmitted to the vulnerable child witness in the testimonial room. If the court order issued pursuant to section 65.20 specifies that the vulnerable child witness shall testify outside the physical presence of the defendant, the image of *1034 the defendant and the image and voice of the person examining the vulnerable child witness shall also be simultaneously transmitted to the vulnerable child witness in the testimonial room. * * *
"5. If the order of the court entered pursuant to section 65.20 requires that the defendant remain in the courtroom, the attorney for the defendant and the district attorney shall also remain in the courtroom unless the court is satisfied that their presence in the testimonial room will not impede full and private communication between the defendant and his or her attorney and will not encourage the jury to draw an inference adverse to the interest of the defendant.
"6. Upon request of the defendant, the court shall instruct the jury that they are to draw no inference from the use of live, two-way closed-circuit television in the examination of the vulnerable child witness.
"7. The vulnerable child witness shall testify under oath except as specified in subdivision two of section 60.20. The examination and cross-examination of the vulnerable child witness shall, in all other respects, be conducted in the same manner as if the vulnerable child witness had testified in the courtroom.
"8. When the testimony of the vulnerable child witness is transmitted from the testimonial room into the courtroom, the court stenographer shall record the testimony in the same manner as if the vulnerable child witness had testified in the courtroom.”
Although this statute expressly authorizes the use of a "two-way” closed-circuit television setup, the constitutionality of the procedure was attacked by defense counsel who relied upon general principles emanating from the Confrontation Clause of the 6th Amendment of the US Constitution. This position was supported, he asserted, by a decision of the Supreme Court of the United States, published just one day before the child witness was scheduled to testify in this case, on June 29, 1988 (Coy v Iowa, 487 US —, 108 S Ct 2798, 101 L Ed 2d 857 [1988]).
The child’s refusal to testify in the courtroom and the defendant’s insistence upon direct confrontation raised a question basic to the criminal justice system: to wit, can a defendant’s right to confront his accuser literally forestall the prosecution’s ability to present relevant evidence if a vulnerable witness refuses to testify in a defendant’s presence, or is *1035 there some way to accommodate the parties without directly interfering with their respective rights.
Most of the Confrontation Clause cases decided before Coy (supra) focused on a defendant’s right to confront his accuser, measured by the degree to which he had the opportunity to conduct a full and fair cross-examination of all statements, whether uttered in or out of the courtroom. (See, e.g., Chambers v Mississippi, 410 US 284 [1973]; Ohio v Roberts, 448 US 56 [1980]; People v Algarin, 129 Misc 2d 1016 [Sup Ct, Bronx County 1986, Bernstein, J.]; see also, Kentucky v Stincer, 482 US 730, 107 S Ct 2658 [1987].)
The statute under attack in Coy (supra), promulgated by the Iowa Legislature, permitted the use of a "one-way” screen that shielded the witness from the defendant and entirely prevented her from seeing him. The screen permitted the defendant only a dim perception of the witness. The statute was overturned by the Supreme Court on the theory that the Confrontation Clause guarantees, in addition to full and fair cross-examination, face-to-face confrontation between a defendant and his accuser. Justice Scalia, writing for the majority, described how the "one-way” screen was employed at the trial to shield the witness from the defendant. The opinion reminds us that face-to-face confrontation encourages honesty and, as such, provides a safeguard for innocent people unjustly accused. (Also see, Whitebread and Heilman, Recent Decision of the United States Supreme Court, 1987-1988 Term [AAJE], at 38-40.) Justice Scalia reasoned that the interests of the child witness testifying against her alleged abuser were outweighed by the mandates of the Confrontation Clause. Justice O’Con-nor, however, states in her concurring opinion that the conflict between the rights of the defendant and the needs of the child witness can be resolved without requiring direct face-to-face confrontation. She specifically cited the New York statute (CPL 65.30) as one that reasonably resolves the conflict because it permits the witness to see the defendant and vice versa, albeit, through closed-circuit television. Nothing in the majority opinion contradicts the opinion of the concurrence in appreciating just enough flexibility in the Confrontation Clause to allow the system to accommodate the needs of a traumatized witness, while ensuring that the defendant’s rights are protected.
In this case, the closed-circuit television was effectively used and the child witness was able to testify outside of the presence of the defendant while being able to view him on the *1036 screen before her; the defendant was similarly able to see the witness on the screen in the courtroom. Of course, before the testimony began the jury was specifically instructed not to draw any inferences unfavorable to the defendant, merely because the "two-way” television system was being used. The jury was further instructed that the purpose of the setup was only to enable the witness to testify.
Unlike the Iowa statute in Coy (supra), the New York statute contemplates face-to-face confrontation, thus maintaining both the letter and spirit of the Confrontation Clause. The child witness was both able to see the defendant yet also feel sufficiently separated, so as to encourage her to respond to the questions put to her.
Accordingly, there was no violation of the defendant’s constitutional right to confrontation and the use of the "two-way” television system was proper.