560 A.2d 1120

**Sandra Ann CRAIG**

v.

**STATE of Maryland.**

**No. 110, Sept. Term, 1988.**

Court of Appeals of Maryland.

July 24, 1989.

552

William H. Murphy, Jr. and M. Cristina Gutierrez (Gary S. Bernstein, Frederick P. Charleston, all on brief), Baltimore, for petitioner.

Gary E. Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

By Chapters 495 and 499, Laws of 1985, the Maryland General Assembly enacted § 9–102 of the Courts and Judicial Proceedings Article. Maryland Code (1984 Repl.Vol., 1988 Cum.Supp.). Designed to facilitate testimony by child witnesses in child abuse (particularly sexual abuse) cases, the statute authorizes a judge to direct that a child's testimony be received via one-way closed-circuit television.[1] When the procedure is invoked, judge, jury, and defendant remain in the courtroom. The child witness and counsel resort to another room, where the witness is questioned. A video monitor displays this process to those in the courtroom, but the witness cannot see the defendant. The procedure cannot be used, however, unless the judge first "determines that testimony by the child victim in the courtroom will result in the child suffering serious emotional

---

1. For a general discussion of the problems of child abuse and efforts to cope with difficulties of testimony by its victims, *see Wildermuth v. State,* 310 Md. 496, 516–519, 530 A.2d 275, 285–286 (1987); *see also Coy v. Iowa,* —— U.S. ——, ——, 108 S.Ct. 2798, 2803–2804, 101 L.Ed.2d 857, 868 (1988) (O'Connor, J., concurring); Note, *To Keep the Balance True: The Case of Coy v. Iowa,* 40 Hastings L.J. 437, 439 n. 18 (1989) (as of January 1989, 41 states have sought to protect child witnesses through a variety of statutory measures).

distress such that the child cannot reasonably communicate." Section 9–102(a)(1)(ii).

In *Wildermuth v. State*, 310 Md. 496, 530 A.2d 275 (1987), § 9–102 was challenged as being in violation of the rights of confrontation granted by the sixth amendment to the United States Constitution and by Article 21 of the Maryland Declaration of Rights.[2] We upheld the facial constitutionality of the statute. We reasoned that the constitutional right of confrontation "ordinarily includes ... the right of the accused to be seen by his accuser when the accuser is testifying against the accused." 310 Md. at 512–513, 530 A.2d at 286. Nevertheless, we concluded, that right is not absolute. Under appropriate circumstances, including the existence of a compelling State interest and a particularized determination of the child witnesses' functional unavailability because of inability to testify due to severe emotional trauma, the statutory procedure passes constitutional muster. *Id.* at 518–520, 530 A.2d at 286–287.

We now face a new attack on § 9–102, once again based on the federal and State confrontation clauses. The primary argument presently before us is that under the Supreme Court's recent decision in *Coy v. Iowa*, —— U.S. ——, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), nothing less than a physical, face-to-face courtroom encounter between witness and accuser can ever satisfy the constitutional rights of confrontation. The Court of Special Appeals rejected this contention. *Craig v. State*, 76 Md.App. 250, 274–284, 544 A.2d 784, 796–800 (1988), and so do we. Nevertheless, we reverse because, as we read *Coy*, the showing made by the State was insufficient to reach the high threshold required

---

**2.** The sixth amendment to the United States Constitution provides, in pertinent part:

> In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him....

Article 21 of the Maryland Declaration of Rights provides, in pertinent part:

> That in all criminal prosecutions, every man hath a right ... to be confronted with the witnesses against him....

by that case before § 9–102 may be invoked.[3] Before explaining our reasoning, we summarize the pertinent facts.

## I.

On 16 October 1986 a Howard County grand jury charged petitioner, Sandra Ann Craig (Craig), with child abuse, first and second degree sexual offense, perverted practice, assault, and battery. The alleged victim in each instance was Brooke Etze. Brooke had attended Craig's Country Pre-School, a kindergarten and pre-kindergarten center owned and operated by Craig, and site of the alleged offenses.

In March 1987, when the case was about to go to trial, the State sought to invoke § 9–102. The section's protection was desired not only with respect to Brooke (then seven years old), but also as to a number of other children who had, according to the State, been abused by Craig, and some of whom did eventually testify in the case involving Brooke.

The Circuit Court for Howard County heard only expert testimony as to whether § 9–102(a)(1)(ii)'s threshold had been crossed. The judge did not question or interview any of the child witnesses, nor were any of them called to the witness stand in Craig's presence, in an attempt to produce testimony in that fashion. *Compare Wildermuth*, 310 Md. at 524 n. 13, 530 A.2d at 289 n. 13 (child's taking the witness stand revealed inability to testify). Without the benefit of our *Wildermuth* or the Supreme Court's *Coy*, neither of which had then been decided, the judge ruled:

There's been evidence presented and based upon the evidence presented I find that the testimony of each of these children in a courtroom will [result] in each child suffering serious emotional distress and such that each of these children cannot reasonably communicate and ac-

---

3. Because of the reversal, we need not address petitioner's contention that she was improperly denied certain exculpatory information to which she was entitled under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). She now is in possession of this material and will be able to make appropriate use of it in the event of a new trial.

cordingly I believe there's a need and it's appropriate to direct that the testimony of these children be provided by way of closed circuit television consistent with the provisions of Section 9–102. . . .

Despite Craig's confrontation-based objections, Brooke and three other children testified via one-way closed-circuit television. The young witnesses, of course, could not see Craig while so testifying.[4] She was convicted on all counts and appealed, on numerous grounds, to the Court of Special Appeals. As we have noted, that court affirmed. We granted a writ of certiorari chiefly in order to reexamine *Wildermuth* in the light of the Supreme Court's pronouncements in *Coy*.

## II.

In *Coy*, two 13–year–old girls were allegedly sexually assaulted. At trial, over Coy's objections, they were allowed to testify protected by a large screen placed between them and the accused. Because of certain lighting arrangements, Coy could "dimly perceive the witnesses, but the witnesses [were unable] to see him ... at all." —— U.S. at ——, 108 S.Ct. at 2799, 101 L.Ed.2d at 863. This was done pursuant to a statute subsequently codified at Iowa Code § 910A.14 (1987): "The court may require a party be confined ... behind a screen or mirror that permits the party to see and hear the child during the child's testimony, but does not allow the child to see or hear the party." The Iowa statute did not contain any requirement that the trial court make a particularized finding of the child's inability to testify in the presence of the accused, and the Iowa trial judge made no such finding. In due course, Coy was convicted. The Supreme Court of Iowa affirmed, holding that since Coy's ability to cross-examine the witnesses was not impaired by the screen, there was no violation of the

---

**4.** For a more detailed description of the § 9–102 procedure, *see Wildermuth*, 310 Md. at 503–504, 530 A.2d at 278–279.

right to confrontation. *State v. Coy*, 397 N.W.2d 730 (Iowa 1986).

Six justices of the Supreme Court of the United States sharply disagreed with that view. Writing for the Court, Justice Scalia declared that the sixth amendment right of confrontation ordinarily demands a "face-to-face encounter" between accused and accuser. *Coy*, —— U.S. at ——, 108 S.Ct. at 2802, 101 L.Ed.2d at 866. The Supreme Court majority found this result was required by basic fairness and to assure " 'the integrity of the fact-finding process....' " *Id.* at ——, 108 S.Ct. at 2802, 101 L.Ed.2d at 866. (quoting *Kentucky v. Stincer*, 482 U.S. 730, 736, 107 S.Ct. 2658, 2662, 96 L.Ed.2d 631, 641 (1987). As Justice Scalia explained:

> The State can hardly gainsay the profound effect upon a witness of standing in the presence of the person the witness accuses, since that is the very phenomenon it relies upon to establish the potential "trauma" that allegedly justified the extraordinary procedure in the present case. That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs.

*Id.* at ——, 108 S.Ct. at 2802, 101 L.Ed.2d at 866.

The same six justices [5] also agreed that if there are any exceptions to the right of confrontation, as above defined, something more than "a legislatively imposed presumption of trauma" is required to trigger them. *Id.* at ——, 108 S.Ct. at 2803, 101 L.Ed.2d at 867. "Since there have been no individualized findings that these particular witnesses needed special protection, the judgment here could not be sustained by any conceivable exception." *Id.* The question of "whether any exceptions exist" was left for "another day." *Id.*

---

5. Justices Brennan, White, Marshall, Stevens, and O'Connor joined Justice Scalia's opinion.

The question reserved by the Supreme Court is before us now. It is a question that was not squarely presented in *Wildermuth,* for in that case, the parties agreed that there could be exceptions to face-to-face confrontation. 310 Md. at 514, 530 A.2d at 284. The issue there was what circumstances would justify use of the exception embodied in § 9–102.

Craig grounds her argument on Justice Scalia's view of the truth-ascertaining effect of physical confrontation in the courtroom—his conviction that while "face-to-face presence may ... upset the truthful rape victim or abused child; ... it may [by the same token] confound and undo the false accuser or reveal the child coached by a malevolent adult" and his insistence that "[i]t is a truism that constitutional protections have costs." *Id.* at ——, 108 S.Ct. at 2802, 101 L.Ed.2d at 866. Writing on behalf of the majority, Justice Scalia acknowledged that the Supreme Court had previously "indicated that rights conferred by the Confrontation Clause are not absolute, and may give way to other important interests," *id.,* but he went on to assert:

The rights referred to in those cases ... were not the right narrowly and explicitly set forth in the Confrontation Clause, but rather rights that are, or were asserted to be, reasonably implicit—namely, the right to cross-examine, see *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1045–1046, 35 L.Ed.2d 297, [309] (1973); the right to exclude out-of-court statements, see *Ohio v. Roberts,* 448 U.S. [56,] 63–65, 100 S.Ct. 2531, 2537–2538, 65 L.Ed.2d 597 [, 605–607 (1980) ]; and the asserted right to face-to-face confrontation at some point in the proceedings other than the trial itself, *Kentucky v. Stincer,* 482 U.S. [730], 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987). To hold that our determination of what implications are reasonable must take into account other important interests is not the same as holding that we can identify exceptions, in light of other important interests, to the irreducible literal meaning of the clause: "a right to *meet face to face* all those who appear and give evidence *at trial.*" *California v. Green,* 399 U.S. [149,] 175, 90 S.Ct. [1930,]

1943–1944 [, 26 L.Ed.2d 489, 506–507 (1970) ] (Harlan, J., concurring) (emphasis added). *Id.* at ——, 108 S.Ct. at 2802–2803, 101 L.Ed.2d at 866–867.

This language forcefully suggests that there is no exception to the right of a criminal defendant to confront, face-to-face, a witness who testifies against him. Yet the Supreme Court majority did not so hold. As we have noted, the Court struck down the Iowa statute because "it could not be sustained by any conceivable exception." *Id.* at ——, 108 S.Ct. at 2803, 101 L.Ed.2d at 867. Expressly declining to decide "whether any exceptions exist," Justice Scalia did observe that "[w]hatever they may be, they would surely be allowed only when necessary to further an important public policy." *Id.*

Two members of the majority for which Justice Scalia wrote concurred in order to explain their understanding of the majority opinion. Justice O'Connor, joined by Justice White, agreed with the Court "that the Confrontation Clause was violated in this case." —— U.S. at ——, 108 S.Ct. at 2803, 101 L.Ed.2d at 868 (O'Connor, J., concurring). She found "nothing novel about the proposition that the Clause embodies a general requirement that a witness face the defendant." *Id.* at ——, 108 S.Ct. at 2804, 101 L.Ed.2d at 868–869. But she wrote separately "to note my view that those rights are not absolute but rather may give way in an appropriate case to other competing interests so as to permit the use of certain procedural devices designed to shield a child witness from the trauma of courtroom testi·mony." *Id.* at ——, 108 S.Ct. at 2803, 101 L.Ed.2d at 868. She wished to make clear "that nothing in today's decision necessarily dooms ... efforts by state legislatures to protect child witnesses," and among the "efforts" to which she referred were statutes of a number of states authorizing, under certain circumstances, the use of one-way closed-circuit television. *Id.* at ——, 108 S.Ct. at 2804, 101 L.Ed.2d at 868.

Indeed, Justice O'Connor "reject[ed] any suggestion ... in the Court's opinion" that the right to confrontation was

absolute. *Id.* at ——, 108 S.Ct. at 2804, 101 L.Ed.2d at 869. She observed that

> the Court has time and again stated that the [Confrontation] Clause 'reflects a *preference* for face-to-face confrontation at trial,' and expressly recognized that this preference may be overcome in a particular case if close examination of 'competing interests' so warrants. *Ohio v. Roberts,* 448 U.S. 56, 63–64, 100 S.Ct. 2531, 2537–2538, 65 L.Ed.2d 597 [, 605–607] (1980) (emphasis added). See also *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 [, 309] (1973).... That a particular procedure impacts the 'irreducible literal meaning of the clause,' [—— U.S. at ——, 108 S.Ct. at 2803, 101 L.Ed.2d at 867] does not alter this conclusion.

Justice O'Connor went on to note that

> our precedents recognize a right to face-to-face confrontation at trial, but have never viewed that right as absolute. I see no reason to do so now and would recognize exceptions here as we have elsewhere.

*Id.* For this reason, she would

> permit use of a particular trial procedure that called for something other than face-to-face confrontation if that procedure was necessary to further an important public policy. See ante, [—— U.S. at ——, 108 S.Ct. at 2802–2803, 101 L.Ed.2d at 867] (citing *Ohio v. Roberts, supra; Chambers v. Mississippi, supra* ). The protection of child witnesses is, in my view and in the view of a substantial majority of the States, just such a policy. The primary focus therefore likely will be on the necessity prong. I agree with the Court that more than the type of generalized legislative finding of necessity present here is required. But if a court makes a case-specific finding of necessity, as is required by a number of state statutes, see, e.g., Cal. Penal Code Ann. § 1347(d)(1) (West Supp. 1988); Fla.Stat. § 92.54(4) (1987); Mass.Gen.Laws § 278:16D(b)(1) (1986); N.J.Stat.Ann. § 2A:84A–32.4(b) (Supp.1988), our cases suggest that the strictures of the

Confrontation Clause may give way to the compelling state interest of protecting child witnesses. Because nothing in the Court's opinion conflicts with this approach, I join it.[6]

—— U.S. at ——, 108 S.Ct. at 2805, 101 L.Ed.2d at 869–870.

As we interpret the concurrence, Justice O'Connor and Justice White joined the majority on the understanding that nothing in Justice Scalia's opinion negated the existence of exceptions to the absolute right of confrontation. That view of the majority opinion seems to have been shared by Justice Scalia as well. Although he took pains to attack the dissent,[7] see, e.g., —— U.S. at —— n. 2, 108 S.Ct. at 2801 n. 2, 101 L.Ed.2d at 865 n. 2, he did not take issue with any part of Justice O'Connor's concurrence. See Craig, 76 Md.App. at 279–280, 544 A.2d at 798.

Reading the majority opinion in light of the gloss placed upon it by the concurrence, the Supreme Court of Wisconsin concluded that Coy does not preclude, under appropriate circumstances, the use of trial procedures that supplant physical confrontation at trial. State v. Thomas, —— Wis. 2d ——, ——, 442 N.W.2d 10, 20 (Wis.1989). So did the Court of Special Appeals. Craig, 76 Md.App. at 280, 544 A.2d at 798–799. Most courts that have considered the matter agree. See, e.g., State v. Vincent, 159 Ariz. 418, 768 P.2d 150 (1989) (relying in part on Wildermuth ); State v.

---

**6.** Three of the four state statutes cited by Justice O'Connor, those of Florida, Massachusetts, and New Jersey, permit testimony out of the physical or televised presence of the defendant, after a case-specific finding of necessity. The California statute provides for two-way television.

**7.** Justice Blackmun, joined by the Chief Justice, dissented. They did not see face-to-face confrontation as a right invariably guaranteed by the sixth amendment. They believed the Iowa statute embodied an important public policy—protecting the child witness from psychological trauma and thus bolstering the truth-finding function of the trial—so that the sixth amendment preference for face-to-face confrontation was overcome. They saw no need for case-by-case inquiry. —— U.S. at —— ——, 108 S.Ct. at 2805–2810, 101 L.Ed.2d at 870–876 (Blackmun, J., dissenting). Justice Kennedy took no part in the consideration or decision in Coy.

*Thomas,* 770 P.2d 1324 (Colo.Ct.App.1988), *cert. granted* (1989); *State v. Bonello,* 210 Conn. 51, 554 A.2d 277, *cert. denied,* —— U.S. ——, 109 S.Ct. 2103, 104 L.Ed.2d 664 (1989); *Glendening v. State,* 536 So.2d 212 (Fla.1988); *Brady v. State,* 540 N.E.2d 59 (Ind.Ct.App.1989); *In the Interest of J.D.S.,* 436 N.W.2d 342 (Iowa 1989); *State v. Eaton,* 244 Kan. 370, 769 P.2d 1157 (1989); *State v. Crandall,* 231 N.J.Super. 124, 555 A.2d 35 (1989); *State in Interest of B.F.,* 230 N.J.Super. 153, 553 A.2d 40 (1989); *State v. Davis,* 229 N.J.Super. 66, 550 A.2d 1241 (1988); *People v. Rivera,* 141 Misc.2d 1031, 535 N.Y.S.2d 909 (N.Y.Sup.Ct.1988); *Ohio v. Eastham,* 39 Ohio St.3d 307, 530 N.E.2d 409 (1988). *But see State v. Murray,* 375 S.E.2d 405 (W.Va.1988).[8]

In view of our reading of *Coy,* and in light of the virtual unanimity of other courts in sustaining the constitutionality of a variety of protective devices not dissimilar to that provided by § 9–102, we conclude that there are, indeed, valid exceptions to face-to-face confrontation. This said, however, we believe *Coy* requires us to limit the use of the exception embodied in § 9–102 to circumstances even narrower than those we delineated in *Wildermuth.*

### III.

Both the right to confrontation and the protection of the child witness relate to the truth-seeking function of a trial. For reasons discussed in both *Coy,* —— U.S. at ——, 108 S.Ct. at 2802, 101 L.Ed.2d at 866, and *Wildermuth,* 310 Md. at 509–513, 530 A.2d at 281–283, confrontation may induce truthful testimony. And yet a child-witness who is too

---

8. The Supreme Court of Louisiana has also dealt with the problem of the constitutionality of a child witness protection statute in the wake of *Coy. Louisiana v. Murphy,* 542 So.2d 1373 (La.1989). The court struck out the provision in the statute which denied the defendant's right of confrontation on the basis that the statute, inconsistent with the holding in *Coy,* did not provide for a case specific finding of necessity. 542 So.2d at 1376. The court expressly stated, however, that it was not addressing the question of whether a statute that did provide for specific findings could be constitutional. *Id.* at 1376.

terrified of the defendant to testify at all will produce no testimony; thus some truth may be concealed.

In *Wildermuth*, we concluded that the balance could be struck in favor of the child witness when the *Roberts, supra,* standard of witness unavailability and evidence reliability is met. 310 Md. at 514–516, 530 A.2d at 284–285. From *Roberts*, we learned "that if there is sufficient necessity for not permitting the accused to confront his accuser directly (unavailability), and if the situation is such that there is some reasonable substitute for the truth-seeking confrontation requirement of physical presence (reliability), then the right of confrontation may still be satisfied." *Wildermuth*, 310 Md. at 515, 530 A.2d at 284 [footnote omitted]. The "reliability" prong of the *Roberts* test, we concluded, is satisfied in large measure by § 9–102 because it "provides for most of the aspects of confrontation that enhance the reliability of testimony: cross-examination, testimony under oath, ability of judge, jury, and accused to view the witness during the testimony." *Id.* at 515, 530 A.2d at 285.

Our focus in *Wildermuth*, as it is in this case, was on "[t]he only reliability function not substantially provided by one-way closed-circuit television"—the truth-enhancing trial procedure of face-to-face confrontation. *Id.* at 516, 530 A.2d at 285. Reasoning that a properly-supported finding under § 9–102(a)(1)(ii) "is tantamount to a finding of unavailability in the *Roberts* sense and meets the necessity prong of the *Roberts* test," *id.*, 310 Md. at 519, 530 A.2d at 286, we held that "[t]he degree of confrontation allowed by § 9–102 ... satisfies the constitutional requirements if there is compliance with subsection (a)(1)(ii) as a condition precedent to application of the statute." *Id.* at 520, 530 A.2d at 287. We now reexamine that holding in light of *Coy* and the contentions raised by Craig.

By the language of the statute, § 9–102 may be applied to deny the defendant the right of face-to-face confrontation if it is shown *"that testimony by the child victim in the courtroom* will result in the child suffering serious emo-

tional distress such that the child cannot reasonably communicate." Section 9–102(a)(1)(ii) [emphasis added]. We bear in mind *Coy's* strong emphasis on the constitutional right of a criminal defendant to physically confront an accuser who appears and gives testimony at trial. We reiterate that this right can be abridged only where there is "a case-specific finding of necessity." —— U.S. at ——, 108 S.Ct. at 2805, 101 L.Ed.2d at 869 (O'Connor, J., concurring); *Wildermuth,* 310 Md. at 518–519, 530 A.2d at 286. In light of these factors, we believe a statutory inquiry which looks generally to a child's inability to testify in open court to be too broad to satisfy the necessity requirement. The question of whether a child is unavailable to testify in the *Roberts* sense should not be asked in terms of inability to testify in the ordinary courtroom setting, but in the much narrower terms of the witness's inability to testify in the presence of the accused.[9] The need for this degree of particularized

---

**9.** It is conceivable that a child witness may be "unavailable" in the *Roberts* sense because of some problem other than the presence of the defendant. For example, the child may be intimidated by the courtroom setting, or by the presence of large numbers of strange adults— judges, lawyers, jurors, other courtroom personnel, and spectators. *See* D. Whitcomb, E. Shapiro, & L. Stellwagen, *When the Victim Is a Child: Issues for Judges and Prosecutors* (1985). This sort of problem *is not a confrontation problem, because it is not the defendant's presence that is causing the difficulty.* In this kind of situation, if the impediment to testimony is severe enough, other remedial measures may be available, although other constitutional rights (the criminal defendant's right to a public trial; the right of the public and the press to attend a criminal trial) may be implicated. *See Waller v. Georgia,* 467 U.S. 39, 45, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31, 38 (1984) (criminal defendant's sixth amendment right to public trial not absolute); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 581, 100 S.Ct. 2814, 2830, 65 L.Ed.2d 973, 1000 (1980) (public's and press's right of access to trial not absolute); *Buzbee v. Journal Newspapers,* 297 Md. 68, 80, 465 A.2d 426, 433 (1983) (same); *see also News American Div. Hearst Corp. v. State,* 294 Md. 30, 36–38, 447 A.2d 1264, 1267–1268 (1982) (discussing *Richmond Newspapers* ). Closure of the courtroom to protect victims of sex crimes from trauma may be justified. *Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 9 n. 2, 106 S.Ct. 2735, 2741 n. 2, 92 L.Ed.2d 1, 11 n. 2 (1986); *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 607–610, 102 S.Ct. 2613, 2620–2622, 73 L.Ed.2d 248, 257–259 (1982); *see also, United States v. Sherlock,* 865 F.2d 1069,

inquiry was perceived by the Court of Special Appeals in this case. It held, in part, that *"where a face-to-face meeting would in fact so traumatize a child witness as to prevent him or her from reasonably communicating,* the State may provide for that testimony to be taken in a setting that, as nearly as practicable, preserves all other aspects embodied in the right of confrontation...." *Craig, supra,* 76 Md.App. at 280, 544 A.2d at 799 [emphasis added].

Other courts have reached similar conclusions. In the recent case of *State v. Crandall, supra,* a New Jersey intermediate appellate court determined a trial court's finding that a particular child witness would suffer " 'substantial emotional upset' " if required " 'to testify in open court' " to be insufficient to support the use of closed-circuit television to receive the child's testimony. 231 N.J.Super. at 131–32, 555 A.2d at 39. Noting the important distinction between testifying in open court and testifying in the presence of the defendant, it pointed out that the trial judge had made no specific findings regarding the distress the child would experience if required to testify in the presence of the defendant. *Id.* "[I]t is a finding of that stress," the court concluded, "which is absolutely critical to support an exception to the generally required right of face-to-face confrontation." *Id.* That the determinative inquiry required to preclude face-to-face confrontation is the effect of the presence of the defendant on the witness or the witness's testimony is also apparent in *Vincent, supra,* 159 Ariz. at 432, 768 P.2d at 164; *State v. Jarzbek,* 210 Conn. 396, 397, 554 A.2d 1094, 1095 (1989), and *State v. Bonello, supra,* 210 Conn. at 58, 59, 554 A.2d at 281. *See also State v. Davidson,* 764 S.W.2d 731, 734 (Mo.App.1989) (insufficient evidence that trauma was product of defendant's presence to warrant defendant's exclusion from videotaped deposition).

---

1076–1077 (9th Cir.1989) (exclusion of defendant's family during testimony of victim justified under particular circumstances of case).

When we read § 9–102(a)(1)(ii), we approach construction of the phrase "in the courtroom" with the understanding that the " 'meaning of the plainest language' is controlled by the context in which it appears." *Kaczorowski v. City of Baltimore*, 309 Md. 505, 514, 525 A.2d 628, 632 (quoting *Guardian Life Ins. Co. of America v. Ins. Comm'r*, 293 Md. 629, 642, 446 A.2d 1140, 1147 (1982)). The most significant constitutional aspect of § 9–102 is the authority therein to deny the accused the right of face-to-face confrontation. It is in this context that the § 9–102(a)(1)(ii) inquiry operates, and it is this context which must be viewed as controlling. We bear in mind, too, that as a general rule a statute will be construed to avoid constitutional conflict whenever feasible. *City of College Park v. Cotter*, 309 Md. 573, 589, 525 A.2d 1059, 1067 (1987); *In re Criminal Investigation No. 1–162*, 307 Md. 674, 685, 516 A.2d 976, 982 (1986). We also presume that the General Assembly intended its enactments to be in harmony rather than at odds with both the Maryland and United States Constitutions. *Marshall v. Dir. of Fin., Pr. Geo's Co.*, 294 Md. 435, 440, 450 A.2d 1300, 1303 (1982).

■ We conclude that under § 9–102(a)(1)(ii), the operative "serious emotional distress" which renders a child victim unable to "reasonably communicate" must be determined to arise, at least primarily, from face-to-face confrontation with the defendant. Thus, we construe the phrase "in the courtroom" as meaning, for sixth amendment and Article 21 confrontation purposes, "in the courtroom in the presence of the defendant." Unless prevention of "eyeball-to-eyeball" confrontation is necessary to obtain the trial testimony of the child, the defendant cannot be denied that right.

■ As a consequence, in the face of a confrontation challenge, § 9–102 ordinarily cannot be invoked unless the child witness initially is questioned (either in or outside the courtroom) in the defendant's presence, and is found by the judge who presided at this procedure to be unable to

"reasonably communicate" because of "serious emotional distress" produced by the presence of the defendant. *See Wildermuth*, 310 Md. at 523–524, 530 A.2d at 289 (personal observation by judge should be the rule rather than exception). The judge's own observations in this regard may, of course, be bolstered by expert testimony bearing on the particular child's inability to testify in the presence of the defendant.

If that finding is made, appropriate protective measures must then be tailored to limit the confrontation right as little as feasible. Section 9–102, read in the light of *Coy*, cannot be the exclusive means of witness protection. It is, rather the ultimate—the farthest a court can go in that direction. Thus, for example, if a child witness will not suffer "severe emotional distress" when testifying via two-way television in a room separate from the courtroom, so that the accused is visible to the witness as well as vice versa, that procedure should be followed. This type of procedure "may raise no substantial Confrontation Clause problem since [it involves] testimony in the presence of the defendant." *Coy*, —— U.S. at ——, 108 S.Ct. at 2804, 101 L.Ed.2d at 868 (O'Connor, J., concurring). *See also Ohio v. Eastham, supra*, 39 Ohio St.3d at 310 n. 5, 530 N.E.2d at 412 n. 5 (noting that testimony by two-way closed-circuit television may be less obstructive of confrontation rights than a one-way procedure). The use of such a procedure is consistent with a trial judge's broad discretion in conducting a criminal trial. *Yorke v. State*, 315 Md. 578, 585, 556 A.2d 230, 233 (1989); *Wiggins v. State*, 315 Md. 232, 239, 554 A.2d 356, 359 (1989); *Ricks v. State*, 312 Md. 11, 31, 537 A.2d 612, 622, *cert. denied*, —— U.S. ——, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988). This wide latitude often extends to the admission of evidence, *Crawford v. State*, 285 Md. 431, 451, 404 A.2d 244, 254 (1979), and to the examination of witnesses, *Trimble v. State*, 300 Md. 387, 401, 478 A.2d 1143, 1150, *cert. denied*, 469 U.S. 1230, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1984). Nothing in § 9–102 precludes such a procedure.

■ If the court determines that neither two-way television nor any other device short of that authorized by § 9–102 will enable the witness to testify, *see* note 9, *supra,* it may then turn to that section. In short, before the procedures of § 9–102 may be used, the trial court faced with a confrontation objection must find that testimony by the child witness in the physical or televised presence of the defendant "will result in the child suffering serious emotional distress such that the child cannot reasonably communicate."

## IV.

■ The steps taken in the trial court, in this case, to invoke the protection of § 9–102 did not comply with the requirements we have set forth in Part III of this opinion.[10] Four children testified via one-way closed-circuit television. Their ages ranged from four to seven. Two were girls and two were boys. When the trial judge made his § 9–102 determination, the finding that authorized the use of closed-circuit television, he had the benefit only of expert testimony on the ability of the children to communicate; he did not question any of the children himself, nor did he observe any child's behavior on the witness stand before making his ruling.[11] He did not explore any alternatives to the use of one-way closed-circuit television.

In the absence of judicial observation of the witnesses and careful exploration of alternatives to full confrontation, beginning with those least restrictive of the right, the testimony before the court was insufficient to support the use of § 9–102. The expert testimony in each case suggested that each child would have some or considerable difficul-

---

10. In fairness to the trial judge, we again note that when he acted, he did not have the benefit of our *Wildermuth,* let alone of the Supreme Court's *Coy.*

11. The judge did examine the children in the course of determining their competency as witnesses. But the record discloses that during the competency questioning, he made no attempt to probe areas pertinent to a § 9–102 finding.

ty in testifying in Craig's presence. For example, as to one child, the expert said what "would cause him the most anxiety would be to testify in front of Mrs. Craig. . . ." The child "wouldn't be able to communicate effectively." As to another, an expert said she "would probably stop talking and she would withdraw and curl up." With respect to two others, the testimony was that one would "become highly agitated, that he may refuse to talk or if he did talk, that he would choose his subject regardless of the questions" while the other would "become extremely timid and unwilling to talk."

We need not debate whether under some circumstances this sort of evidence might help to support a finding that a child, if he or she testified in the defendant's presence, would suffer "serious emotional distress such that the child cannot reasonably communicate." We do point out that in *Wildermuth,* we said that "testimony about the likely impact on the particular child must be specific and must show more than mere nervousness or excitement or some reluctance to testify." 310 Md. at 524, 530 A.2d at 289. Even more critical, "there must be 'a particularized examination of all the circumstances concerning the impact of public testimony *in the presence of the defendant* upon the emotional health of the child.'" *Id.* at 525, 530 A.2d at 289 (quoting *People v. Algarin,* 129 Misc.2d 1016, 1024, 498 N.Y.S.2d 977, 983 (N.Y.Sup.Ct.1986)) [emphasis supplied].

The difficulty here is that the testimony in this case was not sharply focused on the effect of the defendant's presence on the child witnesses. For example, as to one witness, the expert thought the child "coming into the courtroom where she would be faced with the alleged perpetrator *and a courtroom of strangers* would be unable to talk about what happened to her." [Emphasis supplied]. As to another: "he would have great difficulty in *talking in front of people,* particularly in front of Mrs. Craig. . . ." [Emphasis supplied]. With respect to the third child, this dialogue occurred:

Q. What do you think the reaction of Jessie ... would be if brought *into the courtroom* to testify?

A. I [think] that she would probably—Jessie would probably look around and become extremely timid and unwilling to talk. [Emphasis supplied].

When the constitutional right of confrontation is at issue, we repeat, the necessity that may be invoked to diminish that right, through procedures such as those permitted by § 9–102, must be related to testimony in the defendant's presence. It is not enough, for this purpose, that trauma or inability to testify be produced by testifying in the court-room or in front of people. There may be other ways of dealing with that sort of problem, *see* note 9, *supra*, but limitation of the right of confrontation is not one of them.

Whether the trial judge might have narrowed the general-ity of this testimony, had he questioned the potential wit-nesses, we cannot tell. He did not question them; he did not have before him our declaration that "personal observa-tion [and inquiry] by the judge ... should be the rule rather than the exception." *Wildermuth*, 310 Md. at 523–524, 530 A.2d at 289.

Unable to supplement the expert testimony by responses to questions put by him, or by his own observations of the children's behavior in Craig's presence, the judge made his § 9–102 finding in terms of what the experts had said. He ruled that "the testimony of each of these children *in a courtroom* will [result] in each child suffering serious emo-tional distress ... such that each of these children cannot reasonably communicate." He failed to find—indeed, on the evidence before him, could not have found—that this result would be the product of testimony in a courtroom in the defendant's presence or outside the courtroom but in the defendant's televised presence. That, however, is the finding of necessity required to limit the defendant's right of confrontation through invocation of § 9–102. Since that

finding was not made here, and since the procedures we deem requisite to the valid use of § 9–102 were not followed, the judgment of the Court of Special Appeals must be reversed and the case remanded for a new trial.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AND REMAND TO THE LATTER COURT FOR A NEW TRIAL IN ACCORDANCE WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.