561 So.2d 597 (1990)
William S. FRICKE, Appellant,
v.
The STATE of Florida, Appellee.
No. 88-993.
District Court of Appeal of Florida, Third District.
April 3, 1990.
Rehearing Denied June 18, 1990.
*598 Benjamin & Aaronson, Daniel Aaronson, and Richard L. Rosenbaum, Fort Lauderdale, for appellant.
Robert A. Butterworth, Atty. Gen., and Yvette Rhodes Prescott, Asst. Atty. Gen., for appellee.
Before HUBBART, LEVY and GERSTEN, JJ.
HUBBART, Judge.
This is an appeal by the defendant William S. Fricke from a judgment of conviction and sentence for sexual battery upon a person eleven years of age or younger, and for lewd and lascivious assault. The dispositive issues presented for review are (1) whether the child-victim in this case was properly allowed to testify at trial via closed-circuit television without having to confront the defendant in court, and (2) whether certain out-of-court hearsay statements of the child-victim were properly allowed in evidence at trial. Because no case-specific findings of necessity or reliability, respectively, were made by the trial court as required by Florida statute to support the above evidentiary rulings, we conclude that the defendant's Sixth Amendment right to confrontation was violated, and, accordingly, reverse and remand for a new trial.

I
The defendant William S. Fricke was charged by information with four counts of sexual battery on a person eleven years of age or younger [§ 794.011(2), Fla. Stat. (1985)] and four counts of lewd and lascivious assault [§ 800.04, Fla. Stat. (1985)], upon one C.S., a six-year-old child. After a plea of not guilty was entered, the state filed (1) a pretrial motion to present C.S.'s testimony at trial via closed-circuit television, and (2) a pretrial notice of intent to offer in evidence at trial certain out-of-court hearsay statements of C.S. The court conducted separate pretrial hearings on the above motion and notice.
At the hearing on the state's closed-circuit television motion, no live testimony was adduced. Instead, the state relied entirely on the testimony of Dr. Jerome Poliacoff, a child psychologist, given at a prior hearing on the defendant's motion to conduct a discovery deposition of C.S. At this prior hearing, Dr. Poliacoff testified that he had interviewed C.S. on two occasions, that he had been deposed himself by defense counsel in the case and found the atmosphere at the deposition combative, that in his opinion the deposition was structured to diminish the self-esteem or to intimidate the witness, and that in his opinion C.S. would be "traumatized" by appearing at such a deposition. After hearing argument of counsel, the trial court granted the state's closed-circuit television motion based on a finding that such a procedure would protect C.S. "from the impact of having to testify in a courtroom full of strange people" and thus would "minimize the impact of this trial" on a child "with her emotional stability." (T.267, 269-70). No other findings, however, were made by the trial court.
At the hearing on the state's hearsay statement notice, five out-of-court statements by C.S. were proffered by the state. These statements accused the defendant of sexually molesting C.S., and were testified to by Clifford S. (C.S.'s father), Beverly S. (C.S.'s stepmother), Detective Julio Padron (Sexual Battery Unit, Metro-Dade Police Department), and Dr. Jerome Poliacoff (child psychologist). After receiving this evidence and hearing argument of counsel, the trial court ruled that it would "allow this information ... to be admitted in the [sic] evidence during the trial pursuant to [§] 90.803 sub. 23 [Fla. Stat. (1987)]." (T.376). No findings, however, were made by the trial court to support this result. Moreover, the trial court during trial specifically declined to give any case-specific reasons for its ruling, stating:
"I granted the motion on intent to rely and that's the entire motion and I don't *599 need to sit here and lay out reasons for doing it. I granted it."
T.671.
At trial, C.S. was allowed to testify via closed-circuit television from the trial judge's chambers outside the presence of the defendant; only the prosecutor and defense counsel were allowed to confront and question C.S. in the judge's chambers while the defendant, the judge, and jury watched the testimony from a television monitor in the courtroom. The defendant was able to communicate with his counsel, but not vice versa, during C.S.'s testimony. In addition, the state introduced in evidence, over objection, the aforesaid hearsay statements of C.S. Both C.S.'s trial testimony and her hearsay statements were highly incriminating and tended to establish the unlawful sexual acts charged in the information; the defendant, however, denied these charges in his trial testimony.
At the close of all the evidence, the trial court entered a judgment of acquittal on three of the sexual battery counts and on three of the lewd and lascivious counts on the ground that such counts were repetitious. The trial court sent the case to the jury on one count of sexual battery [count 1] and one count of lewd and lascivious assault [count 5]; the jury found the defendant guilty on these two counts. Based on this verdict, the trial court sentenced the defendant to life imprisonment, with a minimum mandatory term of twenty-five years, on the sexual battery count, and five years imprisonment on the lewd and lascivious count  the two sentences to run concurrently. This appeal follows.

II
The defendant's central point on appeal is that the trial court's rulings in (a) authorizing C.S. to testify at trial via closed-circuit television without any case-specific finding of necessity, and (b) admitting in evidence C.S.'s accusatory hearsay statements without any case-specific finding of reliability, violated the defendant's right of confrontation guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. We entirely agree.

A
Turning first to the closed-circuit television ruling, the United States Supreme Court has held that it is a violation of a defendant's Sixth Amendment right of confrontation for a state by statute to preclude a face-to-face encounter between an accusing child abuse witness and a criminal defendant by requiring that a screen be placed between the defendant and the witness while the witness testifies in open court  based solely on a statutory presumption that such screen was necessary to protect child abuse victims from the trauma of facing the defendant while testifying in a sex abuse case. Coy v. Iowa, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). Specifically, the Court concluded that the confrontation clause of the Sixth Amendment provides a criminal defendant with the right to confront face to face the witnesses giving evidence against him at trial; indeed, in the Court's view, this physical confrontation between the accused and his accuser is a "core guarantee" of the confrontation clause with a strong historical foundation. The Court stated:
"The Confrontation Clause does not, of course, compel the witness to fix his eyes upon the defendant; he may studiously look elsewhere, but the trier of fact will draw its own conclusions. Thus the right to face-to-face confrontation serves much the same purpose as a less explicit component of the Confrontation Clause that we have had more frequent occasion to discuss  the right to cross-examine the accuser; both `ensur[e] the integrity of the fact-finding process.' Kentucky v. Stincer, supra, 482 U.S. 730 at 736, 107 S.Ct. [2658], at 2662 [96 L.Ed.2d 631 (1987)]. The State can hardly gainsay the profound effect upon a witness of standing in the presence of the person the witness accuses, since that is the very phenomenon it relies upon to establish the potential `trauma' that allegedly justified the extraordinary procedure in the present case. That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by *600 the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs."
108 S.Ct. at 2802.
In the instant case, as in Coy, a child abuse witness was allowed to testify at trial without having to physically confront the defendant in open court; this witness testified from the judge's chambers via closed-circuit television while the defendant remained in the courtroom. This denial of the right to physically confront his accuser face to face constitutes a prima facie violation of the defendant's Sixth Amendment right to confrontation based on the authority of Coy  absent a recognized exception thereto. We turn now to a discussion of whether such an exception exists, and, if so, whether it is applicable to this case.

1
It seems reasonably clear that the Court in Coy did not establish an absolute rule requiring physical confrontation between the accused and his accuser in all cases as part of the Sixth Amendment guarantee, but left for another day[1] the question of exceptions. Specifically, the Court stated that any exceptions would "be allowed only when necessary to further an important public policy," and that "something more than the type of generalized finding [of necessity] underlying [the Iowa] statute is needed." 108 S.Ct. at 2803.
In a concurring opinion, Justice O'Connor further elaborated on the possibility of exceptions to the right of physical confrontation. According to Justice O'Connor the right is not absolute and "may give way in an appropriate case to other competing interests." 108 S.Ct. at 2803. Justice O'Connor wrote:
"I would permit use of a particular trial procedure that called for something other than face-to-face confrontation if that procedure was necessary to further an important public policy. The protection of child witnesses is, in my view and in the view of a substantial majority of the States, just such a policy. The primary focus therefore likely will be on the necessity prong. I agree with the Court that more than the type of generalized legislative finding of necessity present here is required. But if a court makes a case-specific finding of necessity, as is required by a number of state statutes, our cases suggest that the strictures of the Confrontation Clause may give way to the compelling state interest of protecting child witnesses."
108 S.Ct. at 2805 (citations omitted) (emphasis added). Justice O'Connor cited Section 92.54, Florida Statutes (1987), authorizing a child abuse witness to testify by closed-circuit television, as one of the state statutes which properly requires a case-specific finding.
We agree entirely with Justice O'Connor's analysis. The question in the instant case therefore becomes whether an exception to the constitutional right of physical confrontation  namely, compliance with Section 92.54, Florida Statutes (1987)  has been shown on this record. This statute provides that a child, as here, who is under the age of sixteen and is the victim of an alleged unlawful sexual act, may be permitted to testify at trial via closed-circuit television outside the immediate presence of the defendant  provided the trial court (1) makes a case-specific finding that "there is a substantial likelihood that the child will suffer at least moderate emotional or mental harm if required to testify in open court," § 92.54(1), Fla. Stat. (1987), and (2) makes "specific findings of fact, on the record, as to the basis for its [above-stated] ruling," § 92.54(5), Fla. Stat. (1987), supported by sufficient evidence.
The underlying rationale behind this statutory exception is that it serves an important public policy objective of protecting children under the age of sixteen from *601 sustaining at least a moderate amount of emotional or mental harm as a result of testifying in open court to an unlawful sexual act. Children of tender years, it is thought, deserve special protection by the law because of their unique vulnerability, especially when testifying to shocking sexual acts allegedly committed upon them or in their presence. "No sensitive person can read about child abuse without feeling anguish for the abused child or without understanding a child's needs and wishes to avoid confronting and accusing the alleged abuser in criminal proceedings, especially if the abuser is a close relative of the child." State v. Gilbert, 109 Wis.2d 501, 326 N.W.2d 744, 746-47 (1982). If it can be shown that there is a "substantial probability" that the child will not just be frightened or bewildered or undergo transitory emotional distress or trauma as any child would in these circumstances, but, worse than that, will suffer "at least moderate emotional or mental harm if required to testify in open court," i.e., some moderate, but permanent or near-permanent emotional or mental injury, although not necessarily a debilitating one, which will virtually scar the child for years to come, then the child should be allowed to testify at trial via closed-circuit television. Given this type of substantial showing, it is thought that the child is unavailable as a witness to testify in open court, that, indeed, his testimony is "relatively impossible," People v. Stritzinger, 34 Cal.3d 505, 194 Cal. Rptr. 431, 668 P.2d 738 (1983), because the cost of requiring physical confrontation between the child accuser and the defendant is deemed too high.
As Professor Michael Graham of the University of Miami Law School has correctly noted in a leading article on this subject:
"Witnesses who testify in open court often suffer some emotional distress. Many, if not most, rape victims suffer severe emotional distress or trauma while testifying, especially when face to face with the accused. Presumably, so do many other groups of victims. `Unavailability' requires more than merely showing the possibility of emotional distress or trauma, even more than showing a likelihood that such emotional distress or trauma will be substantial or severe. In People v. Stritzinger, the court held that in order to find that a witness is unavailable due to emotional distress or trauma, the potential psychological injury must render the witness' testimony `relatively impossible.'
For a child witness to be found to be unavailable, the court must decide that the emotional distress or trauma now present or likely to be suffered by the child witness as a result of live face to face confrontation in open court with the accused when testifying as to acts of prohibited sexual contact is significantly more severe than the emotional distress or trauma often suffered by other witnesses. In determining whether it is `relatively impossible' for the child witness to testify on the basis of the likelihood of severe psychological injury, Warren v. United States suggests looking at the following factors:
`[W]e think that the following matters are relevant to the question of psychological unavailability: (1) the probability of psychological injury as a result of testifying, (2) the degree of anticipated injury, (3) the expected duration of the injury, and (4) whether the expected psychological injury is substantially greater than the reaction of the average victim of a rape, kidnapping [child sexual abuse] or terrorist act. Just as in the case of physical infirmity, it is difficult to state the precise quantum of evidence required to meet the standard of unavailability. The factors should be weighed in the context of each other, as well as in the context of the nature of the crime and the preexisting psychological history of the witness.'"
Graham, Indicia of Reliability and Face to Face Confrontation: Emerging Issues in Child Sexual Abuse Prosecutions, 40 Univ. Miami L.Rev. 19, 83-84 (1985) (footnotes omitted).

*602 2
In contrast to the strict statutory requirements discussed above, the trial court in the instant case took no testimony below on whether C.S. would suffer "at least moderate emotional or mental harm if required to testify in open court," made no case-specific finding to that effect, and made no findings of fact on the record to support such a case-specific ruling  all of which are required by Section 92.54, Florida Statutes (1987) in order to allow a child abuse victim to testify via closed-circuit television. See Jaggers v. State, 536 So.2d 321, 329 (Fla. 2d DCA 1988). (a) Instead, the state relied entirely on the testimony of Dr. Poliacoff who testified below that C.S. would be "traumatized" if required to testify at a deposition conducted by defense counsel, especially in light of the highly combative atmosphere of the deposition proceedings which were, in his view, structured to intimidate or diminish the self-esteem of the witness; he gave no testimony, however, concerning whether C.S. would have the same experience if required to testify in open court at trial, as he was never asked. Presumably the trial judge would be in a position to protect the child when testifying in open court and thus eliminate the alleged combative or intimidating atmosphere of a judicially unsupervised deposition. Moreover, it is not entirely clear what Dr. Poliacoff meant by "traumatized," as he did not describe this condition in any detail, nor did he indicate whether this condition was permanent or transitory. (b) Beyond that, the trial court's generalized finding that allowing C.S. to testify via closed-circuit television would protect her from the emotional impact of having to testify in open court, while undoubtedly true, fails to satisfy the case-specific finding of necessity required by the above statute. Indeed, the confrontation clause of the Sixth Amendment presupposes that a witness will have precisely such an emotional experience as an incentive for telling the truth.
This being so, it is clear that Section 92.54, Florida Statutes (1987), was not complied with below, and, accordingly, the defendant's Sixth Amendment right of confrontation was violated by allowing C.S. to testify via closed-circuit television without having to physically confront the defendant while testifying against him. Coy v. Iowa. Given the highly incriminating nature of C.S.'s trial testimony, we cannot say that this federal constitutional error was harmless beyond a reasonable doubt, Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), and, accordingly, reverse and remand the cause for a new trial. Upon remand, however, the state may, if it chooses, seek to allow C.S. to testify via closed-circuit television  provided the requirements established by Section 92.54, Florida Statutes (1987), as interpreted by this opinion, are followed.

B
Turning next to the trial court's ruling admitting in evidence C.S.'s five hearsay statements, Section 90.803(23)(a), Florida Statutes (1987), provides that the out-of-court statements of a child abuse victim who is eleven years of age or less, as here, may be admitted in evidence as an exception to the hearsay rule, provided two conditions are met. First, the trial court must find, based on sufficient evidence adduced at a hearing conducted outside the presence of the jury, that "the time, content, and circumstances of the statement provide sufficient safeguards of reliability," as to which the court may consider "the mental and physical age and maturity of the child, the nature and duration of the abuse or offense, the relationship of the child to the offender, the reliability of the assertion, the reliability of the child victim, and any other factor deemed appropriate." § 90.803(23)(a)(1), Fla. Stat. (1987). Second, the child must either (a) testify at trial, as here, or (b) be otherwise unavailable as a witness, provided other safeguards not relevant here are observed. § 90.803(23)(a)(2)(a), (b), Fla. Stat. (1987). Inasmuch as this statute is a recently created exception to the hearsay rule and is not firmly rooted in the common law, it is clear that the admission of such evidence violates the defendant's Sixth Amendment right of confrontation unless at least the *603 reliability requirement under the above statute has been satisfied. See Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); Perez v. State, 536 So.2d 206, 208-09 (Fla. 1989).
In the instant case, the defendant's Sixth Amendment confrontation right was violated by the admission in evidence of C.S.'s five hearsay statements accusing the defendant of sexual abuse. This is so because the trial court made no finding, as required by Section 90.803(23)(a)(1), Florida Statutes (1987), that "the time, content and circumstances of the statement provide sufficient safeguards of reliability"; to the contrary, the trial court expressly declined to give any reasons on the record for admitting these statements.[2] It therefore follows that the hearsay statements were improperly admitted in evidence in violation of the defendant's Sixth Amendment right of confrontation. Given the highly incriminating nature of the hearsay statements, we cannot say that this federal constitutional error was harmless beyond a reasonable doubt, Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), and, accordingly, reverse and remand the cause for a new trial. Upon remand, however, the state may, if it chooses, seek to introduce C.S.'s hearsay statements described above  provided the requirements of Section 90.803(23)(a), Florida Statutes (1987), as interpreted in this opinion, are followed.

III
We find no merit, however, in the remaining points on appeal raised by the defendant. A detailed analysis of why this is so would unduly burden this opinion, but suffice it to say, we have carefully reviewed each of the defendant's points and conclude that none present reversible error. For the foregoing reasons, the final judgment of conviction and sentence under review is reversed, and the cause is remanded for a new trial.
Reversed and remanded.
NOTES
[1] That day may be close at hand; the Court has accepted jurisdiction in a case from Maryland which raises the question of case-specific findings showing the need to protect the child. Craig v. State, 316 Md. 551, 560 A.2d 1120 (1989), cert. granted, ___ U.S. ___, 110 S.Ct. 834, 107 L.Ed.2d 830 (1990).
[2] We reject the state's contention that this point has not been preserved for appellate review. The defendant objected below to the admission in evidence of the subject hearsay statements based on hearsay grounds so that the contemporaneous objection rule has been fully satisfied. Castor v. State, 365 So.2d 701, 703 (Fla. 1978).