**STATE of Minnesota, Respondent,**

v.

**Russell Duane CONKLIN, Appellant.**

**No. C5-88-545.**

Supreme Court of Minnesota.

Aug. 18, 1989.

Rehearing Denied Oct. 18, 1989.

C. Paul Jones, State Public Defender, Bradford Colbert, Cathryn Middlebrook, Asst. State Public Defenders, Minneapolis, for appellant.

Tom Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Asst. Atty. Gen., St. Paul, for amicus curiae.

KEITH, Justice.

This case presents the difficult question of under what circumstances a defendant in a child sexual abuse case can be removed from the room during the testimony of the child abuse victim without violating the defendant's constitutional right to confront the witnesses who testify against him.

Appellant Russell Duane Conklin was convicted of one count of first degree criminal sexual conduct, Minn.Stat. § 609.342, subd. 1(g) (1988) and one count of second degree criminal sexual conduct § 609.343, subd. 1(a) (1988) and was sentenced to 43 months in the Minnesota Correctional Facility at Stillwater. He was acquitted of one other count of criminal sexual conduct in the second degree, Minn.Stat. § 609.343, subd. 1(h)(v) (1988) (multiple acts committed over an extended period of time).

The sexual abuse involving his 4–year-old daughter, L.C., occurred sometime between December 1986 and February 22, 1987 during once a week day long visits made by L.C. and her 7–year–old brother, R.C., to appellant's apartment. R.C. and L.C. do not live with appellant, but rather have been under the foster care of Diane and Harold Schroedl since shortly after L.C. was born. L.C.'s only contacts with appellant were through the scheduled visitations. The purpose of the visits was to gradually reconcile appellant with his children, a process that would have resulted in reuniting the family sometime in mid–1987. The Schroedls had expressed some concern about the plan to reunite appellant with the children, and on earlier occasions had inquired about adopting the children themselves, or having other members of their family adopt L.C. and R.C.

The first suggestions of the existence of sexual abuse occurred on Tuesday, February 24, 1987. L.C. appeared to be sore, or uncomfortable in her vaginal area and had appeared uncomfortable for several weeks. Her foster mother Diane Schroedl asked her if anyone had hurt her there, and L.C. told her that appellant, who she calls Big Russ, had "punched" her there, and had showed her his "peter." She demonstrated a punching motion with a closed fist, and

claimed that it occurred while she was on the toilet at appellant's apartment.

Diane Schroedl took L.C. and R.C. to the Anoka County Courthouse the next day, Feb. 25, where they spoke with Lonnie Payne, an investigator in the sexual abuse unit of the Sheriff's Department. Payne interviewed L.C., taping the conversation, and later interviewed R.C. Appellant was subsequently arrested. On March 3, 1987, L.C. was interviewed and examined by Dr. Carolyn Levitt, a pediatrician experienced in examining children for sexual abuse. The interview was videotaped, and the tape was later entered into evidence at trial and was shown to the jury.

On August 18, 1987, a hearing was held at which L.C. was found competent to testify. Immediately after the competency hearing, L.C.'s testimony was taken and videotaped for use at trial as permitted by Minn.Stat. 595.02, subd. 4(a) (1988). During her testimony, the court granted the state's motion to remove appellant from the room. He watched the remainder of L.C.'s testimony via a video monitor in another room.

On September 15, 1987, a Rasmussen hearing was held and the court ruled that hearsay statements made by L.C. to her foster mother, to Lonnie Payne and to Dr. Levitt would be admissible at trial under Minn.Stat. 595.02, subd. 3 (1988). The videotaped interview with Dr. Levitt was ruled admissible under that statute and Minn.R.Evid. 803(4) (statements made to a physician for diagnostic purposes).

At trial, Lonnie Payne, the Sheriff's Department investigator, testified to statements made by L.C. during her initial interview at the courthouse. L.C. told her of an incident where appellant showed his "peter" to her and R.C. in his apartment, and both children touched it. Payne asked L.C. if she had smelled the penis and L.C. responded that she had. L.C. told Payne she was told not to tell anyone about the incident. Payne also testified that when she interviewed R.C., he denied that any of this had ever happened. Lonnie Payne also asked L.C. "if anyone had ever touched her pee that she didn't want them to." L.C.

answered that Big Russ had, and that she did not like it. The touching occurred in the bathroom and he used his finger. She said that the touching had hurt her. L.C. also said that appellant had eaten her "pee" with his mouth. She further claimed that he drank her urine which he collected in a glass while she was on the toilet. R.C. was not present during these last incidents.

Diane Schroedl, L.C.'s foster mother, testified that L.C. exhibited signs of discomfort beginning about February 1, 1987; she was sore and itchy in her vaginal area. On February 24, L.C. told Schroedl of being "punched" "down there" by Big Russ with a closed fist. After her interview with Lonnie Payne on February 25, L.C. again told Schroedl the same things she had said the day before, but added the account of appellant drinking her urine. In July, before a scheduled hearing, L.C. told Schroedl her story again, "word for word" except adding a new part about appellant eating her "poop." She demonstrated a closed fisted punch, again spoke of drinking urine, and said that she was not supposed to tell anyone.

Dr. Carolyn Levitt, the pediatrician, testified that during her examination of L.C., she touched L.C. on the clitoris and asked if anyone had ever touched her there. L.C. responded that appellant touched her there with his finger and mouth. Dr. Levitt also touched the anal opening and L.C. said she had not been touched there. Dr. Levitt testified that in her opinion, L.C. was abused; her vagina was penetrated. Her examination of the hymen indicated that it was "narrowed" and "thinned out." The opening was larger than she was used to seeing in children that age, which could have been caused by the insertion of something, such as an object the size of a finger. On cross examination, she admitted the symptoms she noted in L.C. can also be found in girls who have had vaginitis.

Dr. Levitt's videotaped interview of L.C. was admitted into evidence and played for the jury. On the tape Dr. Levitt asked L.C. if she remembered being touched in a way she didn't like. L.C. responded that her father had touched in the vaginal area with

his finger causing pain. She also said that appellant pulled down her clothes, and then drank her "pee" from a glass, and had showed her his "peter."

L.C.'s previously videotaped trial testimony was also played for the jury. On the tape she said that appellant was never in the bathroom when she was there, and that he never took off his clothes in front of her or removed her clothing. She did not know what a "peter" was, and she had never smelled one. She remembered telling her foster mother that her "pee" hurt, but could not remember why, and she did not remember telling her that Big Russ had touched her there. She remembered telling her foster mother about a visit to Big Russ' apartment, but could not remember what she said about it, or what happened at the apartment. She said that she was not afraid of Big Russ and denied that he ever told her to keep quiet about anything.

At this point in the videotaped testimony, the defendant was removed from the room, and this fact was noted to the jury by the prosecution during the actual trial. L.C. still could not name male or female sex organs when shown an anatomically correct doll. She denied that anyone had punched her. She remembered being sore when she urinated but did not know why. However, she finally did state that Big Russ "punched" her "down there," with his fist, indicating her vaginal area. It occurred on the toilet, and she had her clothes on. He punched her only once, and then said "sorry." He never took his clothes off, and she never saw his penis. He never told her to not tell anyone about being punched.

Appellant testified and denied all of the allegations. Several character witnesses also testified on his behalf. The jury returned a verdict of guilty. On appeal, appellant challenges the trial procedure used

to exclude him from the room while L.C. testified, and the use at trial of out-of-court statements L.C. had made to her foster mother, Lonnie Payne and Dr. Levitt, all of which he claims violated his right to confront the witness against him. We ordered accelerated review of this case. We reverse appellant's conviction and remand for a new trial.

1. The statute in question, Minn.Stat. § 595.02, subd. 4(c) (1988) permits the testimony of a child witness who is under age 10 to be taken outside the presence of the defendant in certain instances. It provides:

> The court shall permit the defendant in a criminal or delinquency matter to observe and hear the testimony of the child in person. If the court, upon its own motion or the motion of any party, determines that the presence of the defendant during testimony taken pursuant to this subdivision would psychologically traumatize the witness so as to render the witness unavailable to testify, the court may order that the testimony be taken in a manner that:
>
> (1) the defendant can see and hear the testimony of the child in person and communicate with counsel, but the child cannot see or hear the defendant; or
>
> (2) the defendant and child can view each other by video or television monitor from separate rooms.

Appellant was removed from the room during the testimony of L.C., and watched her testimony via a one-way closed circuit television monitor on which he could see and hear L.C. but she could not see or hear him.[1] Appellant refused an offer for a telephone connection with his attorney who was present in the room when L.C. testified. Appellant argues that the statute on its face and as applied violated his right to

---

1. We note that the trial court did not follow the proper procedures under § 595.02, subd. 4(c) when it excluded appellant. The trial court used a one-way video monitor, on which appellant could see L.C. testify, but she could not see or hear appellant. Subdivision 4(c)(2) requires that if a video monitor is used the defendant and the witness must be able to view "each other." This contemplates a two-way video con-

nection. Subdivision 4(c)(1), the only other alternative, requires that the defendant be allowed to observe the witness *"in person"* while the child witness cannot see or hear the defendant. This section does not authorize a one-way video connection. The procedures used in this case violated the procedures outlined by the statute.

confront the witnesses testifying against him.

The confrontation clauses of the United States and Minnesota Constitutions provide: "In all criminal prosecutions the accused shall enjoy the right * * * to be confronted with the witnesses against him." U.S. Const. amend. VI; Minn. Const. art. 1, § 6. In *Coy v. Iowa*, — U.S. ——, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), decided after the trial in this case, the Supreme Court overturned the conviction of a sex offender because he was denied his sixth amendment right to confront witnesses giving testimony against him at trial. The Iowa statute permitted a screen to be placed between the defendant and the primary witnesses, two 13–year-old girls who were sexually assaulted by the defendant.[2] The screen allowed the defendant to dimly perceive the witnesses, but prevented the witnesses from seeing the defendant. The Court stated that the confrontation clause provides two types of protections to the criminal defendant; "the right physically to face those who testify against him, and the right to conduct cross-examination." *Id.* 108 S.Ct. at 2801. Face-to-face confrontation is "the core of the values furthered by the Confrontation Clause." *Id.* (citation omitted). Analyzing the placement of the screen between the defendant and witnesses, the Court said "[i]t is difficult to imagine a more obvious or damaging violation of the defendant's right to a face-to-face encounter." *Id.* at 2802. However, the Court left open the question of whether exceptions existed to the confrontation requirement. Any exceptions, however, should they exist, would be permitted only when necessary to further

an important public policy. *Id.* at 2803. The Iowa statute was unconstitutional because it allowed a screen to be placed in front of witnesses without any showing of necessity. The statute did not require any individualized finding by the court that the witnesses would be traumatized if forced to face the defendant, but rather presumed that all child witnesses would be traumatized. *Id.* at 2803.

Exceptions to the confrontation requirement have been found to exist with respect to other rights "implicit" in the confrontation clause, such as the right to cross examine witnesses. *See Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

Unlike the Iowa statute at issue in *Coy*, Minn.Stat. § 595.02, subd. 4(c) establishes a permissible exception to the confrontation clause because it requires a specific finding that the denial of the right to confrontation is necessary to effectuate an important public policy. Protecting child witnesses under 10 years of age from trauma is certainly an important public policy. *See Coy*, 108 S.Ct. at 2805 (O'Connor, J., White, J., concurring) ("The protection of child witnesses is, in my view and in the view of a substantial majority of the States, just such an [important public] policy.") The statute also requires the trial court to make a determination that "the presence of a defendant during testimony * * * would psychologically traumatize the witness so as to render the witness unavailable to testify." This satisfies the requirement in *Coy* that there be an individualized finding of necessity. Thus, the statute on its face is constitutional. Similar conclu-

---

**2.** Iowa Code § 910A.14(1) (1987) provides:

A court may, upon its own motion or upon motion of any party, order that the testimony of a child, as defined in section 702.5, be taken in a room other than the courtroom and be televised by closed circuit equipment in the courtroom to be viewed by the court. Only the judge, parties, counsel, persons necessary to operate the equipment, and any person whose presence, in the opinion of the court, would contribute to the welfare and well-being of the child may be present in the room with the child during the child's testimony.

The court may require a party be confined to an adjacent room or behind a screen or mirror that permits the party to see and hear the child during the child's testimony, but does not allow the child to see or hear the party. However, if a party is so confined, the court shall take measures to insure that the party and counsel can confer during the testimony and shall inform the child that the party can see and hear the child during testimony.

sions have been reached by other courts analyzing similar statutes.[3]

2. *Coy v. Iowa* makes clear that exceptions to the requirement of face-to-face confrontation are allowed only after the court makes an "individualized finding" that the particular witness needs special protection. 108 S.Ct. at 2803. Although the Court did not express what type of showing of necessity is required, it said that a generalized legislative finding of necessity as found in the Iowa statute was insufficient to establish necessity. *Id.* Thus the Supreme Court has given little guidance on what "individualized findings" of traumatization must be made before a defendant can be removed during the testimony of a witness.

Minn.Stat. § 595.02, subd. 4(c) is intended to protect child witnesses in sexual abuse cases from the psychological trauma of testifying in court. However, not all children experience trauma when testifying. *See Minnesota Developments—Defendants' Rights in Child Witness Competency Hearings: Establishing Constitutional Procedures for Sexual Abuse Cases,* 69 Minn.L.Rev. 1377, 1385 n. 16 (1985). There are many obstacles at trial encountered by child witnesses which impede their testimony and often cause trauma. The unfamiliar courtroom setting, the necessity of speaking to strangers about embarrassing events, the presence of a jury, the problems with language and mutual comprehension all contribute to an oppressive environment in which child sexual abuse victims may face problems in testifying. Anxiety may also be increased by intimidating trial procedures such as cross-examinations, and by sequestration, repeated long delays and last minute postponements. The presence of the accused during the child's testimony may heighten stress or trauma, and the outcome of the trial—either acquittal of the abuser or in some cases the conviction of a close family member—may result in trauma. *See* Libai,

*The Protection of the Child Victim of a Sexual Offense in the Criminal Justice System,* 15 Wayne L.Rev. 977, 984 (1969); Parker, *The Rights of Child Witnesses: Is the Court a Protector or Perpetrator?* 17 New Eng.L.Rev. 643, 646, 652–53 (1982). The use of video-camera equipment and the necessity of speaking into a microphone may also increase the stress on the child.

The statute provides that a determination must be made that "the presence of the defendant during testimony * * * would psychologically traumatize the witness so as to render the witness unavailable to testify." Minn.Stat. 595.02, subd. 4(c). The trial court found L.C. to be unavailable to testify because she lacked recollection and was unwilling to testify. *See* Minn.R. Evid. 804(a)(2) and (3). The findings are ambiguous on whether this was caused by the psychological traumatization of testifying in the presence of the defendant. The court said: "I don't know if she is traumatized, as such, psychologically. I'm not an expert. I haven't heard any testimony." At the hearing, on the issue of psychological traumatization, Diane Schroedl was the only witness. She testified that L.C. was nervous and that was causing her problems with remembering the events about which she was questioned. She opined that the video camera might be the source of L.C.'s nervousness. The trial court noted that L.C. appeared more nervous during the videotaping of her trial testimony than she had been during the competency hearing earlier that day which was not videotaped, and at which appellant was not present. Regarding L.C.'s nervousness the trial judge said: "I don't know the reason for that. It could be the video camera. Who knows."

■ Using the *Coy* requirement of an "individualized finding" or the statutory requirement, the trial court's findings in this case are insufficient. The court made no finding that it was necessary to exclude

**3.** *State v. Bonello,* 210 Conn. 51, 554 A.2d 277, *cert. denied,* —— U.S. ——, 109 S.Ct. 2103, 104 L.Ed.2d 664 (1989); *Glendening v. State,* 536 So.2d 212, 218 (Fla.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 3219, 106 L.Ed.2d 569 (1989); *Wildermuth v. State,* 310 Md. 496, 518–20, 530 A.2d 275, 286–87 (1987); *State v. Tafoya,* 108 N.M. 1, 765 P.2d 1183 (Ct.App.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1572, 103 L.Ed.2d 938 (1989). *See also State v. Vincent,* 159 Ariz. 418, 768 P.2d 150, 161 (1989).

the defendant during the witness' testimony because his presence was causing psychological traumatization to the child witness. This is especially troublesome since the witness herself testified that she was not afraid of appellant. Like the defendant in *Coy v. Iowa,* appellant has been denied his right to confront the witness against him based on an impermissible presumption that his presence would traumatize the child witness.[4]

Other courts have reached this same result. In *State v. Vincent,* 159 Ariz. 418, 768 P.2d 150 (1989), the trial court had also failed to make a particularized showing that exclusion of the defendant during the testimony of two child witnesses would be necessary. The trial court stated merely that the child witnesses "could be traumatized." *Id.* 159 Ariz. at 428, 768 P.2d at 160. There was no specific evidence concerning the likely impact of the courtroom testimony on the witnesses. The court held that statute permitting the testimony of a child witness to be videotaped out of the presence of the defendant, Ariz.Stat. § 13–4253 was unconstitutional as applied. *Id.* at 429, 768 P.2d at 160–61. *See also People v. Thomas,* 770 P.2d 1324, 1328 (Colo.Ct.App.1988) *cert. granted* (1989); *State v. Eastham,* 39 Ohio St.3d 307, 530 N.E.2d 409, 412 (1988).

Neither the *Coy* decision nor the statute provide any guidance on what constitutes an individualized finding or determination

that the child witness would be psychologically traumatized so as to be unavailable to testify if required to testify in the presence of the defendant. The inquiry to be made by the trial court on this issue will necessarily vary with each case. However, in every case it must be established by specific evidence that the particular witnesses is or would be psychologically traumatized and that traumatization is substantially caused by the presence of the defendant rather than by other reasons. The evidence of psychological traumatization "must show more than mere nervousness or excitement or some reluctance to testify." *Craig v. State,* 316 Md. 551, 569, 560 A.2d 1120, 1129 (1989) (citation omitted).

The finding may be based on the trial court's personal observation of the witness, but there must be sufficient evidence in the record to support the court's finding. The trial judge is permitted, if not encouraged, to question the child witness in camera if necessary. Additional testimony should be taken from witnesses having personal knowledge of the child. Their testimony must be about the consequences of having the child testify in the presence of the defendant, must be specific, and must be based on their experience with that particular child. This pertains to expert testimony as well. While expert testimony is not required in every case, it may be necessary in cases where the cause of the child's testimonial difficulties and trauma is not clear.[5]

4. The insufficient finding of psychological traumatization was not "cured prior to trial," as the dissent asserts, by the findings of another judge who reviewed L.C.'s videotaped trial testimony and the record of the hearing four weeks after L.C.'s trial testimony was taken. The second judge ruled that the presence of appellant had a "chilling effect" upon L.C.'s testimony. He did not, however, make any finding that L.C. would be psychologically traumatized if required to testify in the presence of the appellant. Nor could the judge make such a finding. He relied solely on the same evidence that the first judge used in making his ruling, and that evidence is simply insufficient to support a finding of psychological traumatization since it did not show that L.C. was anything more than just nervous, excited or reluctant to testify. Moreover, the second judge had no opportunity to observe L.C. personally, and there is nothing in the record to indicate that he ever met her. This is not the

finding of psychological traumatization needed to meet the requirements of the statute or the constitution.

5. *See also* Uniform Rules of Evidence 807(a)(i) (adopted Nov. 1986) providing for special procedures to protect child witnesses upon a finding by the court that "there is a substantial likelihood that the minor will suffer severe emotional or psychological harm if required to testify in open court." Comments to the rule provide in part:

This standard is intended to require more than a showing of mere distress on the part of a child who is faced with the prospect of testifying. It is a strict standard, which is imposed in recognition of the fact that live testimony and cross-examination is the preferred mode of proof. It is not contemplated that the court will necessarily receive expert testimony concerning the minor's emotional

■ The next question is whether the violation of the right to confrontation was harmless error. In *Coy v. Iowa,* the Court stated that the harmless error rule should be applied when a defendant's rights under the confrontation clause have been violated. 108 S.Ct. at 2803. The harmless error analysis has been applied in other cases involving violations of the confrontation clause. *See Delaware v. Van Arsdall,* 475 U.S. 673, 682, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). When constitutional errors are involved, the state has the burden to show that the errors are harmless beyond a reasonable doubt by showing that the error did not contribute to the verdict obtained. *Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–828, 17 L.Ed.2d 705 (1967), *State v. Crisler,* 285 N.W.2d 679, 682 (Minn.1979). Thus, constitutional errors are presumed to be prejudicial.

In. *Coy* the Court stated that the harmless error analysis in confrontation clause cases should not attempt to evaluate what effect the defendant's presence or absence would have on a particular witness because that would involve mere speculation. 108 S.Ct. at 2803. In this case, however, the record clearly reflects the effect that appellant's presence and then absence had on the testimony of L.C. Before the defendant was removed, L.C. said nothing in her testimony to implicate appellant. She de-

nied or could not remember whether appellant had engaged in the conduct on which he was charged. Only after appellant was excluded did L.C. say that he "punched" her in the vaginal area. The only other evidence of guilt was L.C.'s out of court statements to her foster mother, Lonnie Payne and Dr. Levitt. Although those hearsay statements are deemed to be "substantive evidence" by Minn.Stat. § 595.02, subd. 3 if properly admissible, it is impossible to say that the jury would have convicted appellant anyway had appellant remained in the room during L.C.'s testimony, and she had continued to deny or lack recollection of her previous statements. The weight the jury would give to her prior unsworn, out of court statements is simply not known, and thus we cannot say that the error in removing appellant was harmless beyond a reasonable doubt. The state has not met its burden to show that the error was harmless beyond a reasonable doubt.

3. The confrontation clauses of the United States and Minnesota Constitutions are also implicated by the use at trial of prior out-of-court statements that L.C. made to her foster mother, Lonnie Payne and Dr. Levitt. Minn.Stat. § 595.02, subd. 3 (1988) permits the admission of such statements at trial as "substantive evidence" in child sexual abuse cases.[6] The underlying purpose of the confrontation re-

state in making this determination. The court is in an adequate position to assess the surrounding circumstances and to form a judgment concerning the likely effect of live testimony in open court on the minor without expert assistance.

6. Section 595.02, subd. 3 provides:
An out-of-court statement made by a child under the age of ten years or a person who is mentally impaired as defined in section 609.-341, subdivision 6, alleging, explaining, denying, or describing any act of sexual contact or penetration performed with or on the child or any act of physical abuse of the child or the person who is mentally impaired by another, not otherwise admissible by statute or rule of evidence, is admissible as substantive evidence if:
    (a) the court or person authorized to receive evidence finds, in a hearing conducted outside of the presence of the jury, that the time, content, and circumstances of the statement and the reliability of the person to

whom the statement is made provide sufficient indicia of reliability; and
    (b) the child or person mentally impaired as defined in section 609.341, subdivision 6, either:
        (i) testifies at the proceedings; or
        (ii) is unavailable as a witness and there is corroborative evidence of the act; and
    (c) the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.
    For purposes of this subdivision, an out-of-court statement includes video, audio, or other recorded statements. An unavailable witness includes an incompetent witness.
*See also* Minn.Stat. § 260.156 (1988).

quirement is to "augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence." *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980). The use of hearsay statements deprives the defendant of the right to confront and cross examine the witness, and violates the requirement that testimony be sworn, all of which are intended to protect the integrity of the factfinding process by ensuring that only reliable evidence will be used against a defendant. Thus hearsay can be used against a criminal defendant at trial only if its use is necessary, and only if the hearsay evidence is demonstrably reliable. *Ohio v. Roberts* 448 U.S. at 65–66, 100 S.Ct. at 2538–2539; *State v. Hansen*, 312 N.W.2d 96, 102 (Minn.1981).

■ The trial court in this case conducted a pretrial hearing to determine whether L.C.'s prior statements were reliable so as to be admissible under the confrontation clauses, and Minn.Stat. § 595.02, subd. 3 (1988). *See State v. Dana*, 422 N.W.2d 246, 249 (Minn.1988). Testimony was taken from Schroedl, Payne and Dr. Levitt, and the court ruled that the statements L.C. made to these three were reliable. The factors set out in the statute for determining the reliability of hearsay evidence include the "time, content and circumstances of the statement and the reliability of the person to whom the statement is made." Minn.Stat. § 595.02, subd. 3. As part of this analysis, the court must consider, among other things, the spontaneity of the statements, the consistency of the statements, the knowledge of the declarant, the motives of the declarant and witnesses to speak truthfully and the proximity in time between the statement and the events described. *See State v. Allen*, 157 Ariz. 165, 174, 755 P.2d 1153, 1162 (1988). The court also should consider possible suggestiveness created by leading questions, particularly by a parent or close authority figure; and should evaluate corroborating factors, such as whether the declarant has recanted or reaffirmed the statement and also any corroborating physical evidence. Graham, *The Confrontation Clause, the Hearsay Rule, and Child Sex-*

*ual Abuse Prosecutions: The State of the Relationship*, 72 Minn.L.Rev. 523, 532 (1988). In *State v. Dana*, 422 N.W.2d 246, we stated that "the heart of the matter of determining whether to admit hearsay is that unreliable evidence should be kept from the jury; this is a legal determination that the trial court makes on the basis of experience and legal education." *Id.* at 249 (citation omitted). A ruling on the reliability of hearsay statements is for the court to make and is of vital importance in cases such as this.

Because of our disposition of this case, it is not necessary that we rule on whether the admission of those statements violated appellant's right to confrontation. We note, however, that evidence was adduced at trial that may have some bearing on the reliability of some of those statements, specifically, the fact that the victim and some of the witnesses were unhappy or concerned about the county's plan to reunite appellant with his children. This is another factor to be considered by the trial court in ruling on whether the out-of-court statements were reliable.

Finally, we note in passing that we are troubled by the prosecution's conduct at trial of stopping the videotaped testimony of L.C. at the point where appellant was excluded from the room and noting that fact to the jury. The jury would have had no other way of knowing that the defendant had been removed during L.C.'s testimony. This practice was unnecessarily prejudicial to the defendant, and may have affected the fairness of the trial by undermining the presumption of innocence in favor of the accused. *See Estelle v. Williams*, 425 U.S. 501, 503–04, 96 S.Ct. 1691, 1692–93, 48 L.Ed.2d 126 (1976) (requirement that defendant stand trial in prison clothes unnecessarily impairs the presumption of innocence). However, this issue was not raised on appeal, and our disposition of this case does not require us to rule on it.

Reversed and remanded for a new trial.

YETKA, Justice (dissenting).

I respectfully dissent. I agree with the majority that Minn.Stat. § 595.02, subd.

4(c) is facially constitutional, but I would also find that it is constitutional as applied in this case. Furthermore, even if appellant's sixth amendment right was violated by allowing the victim to testify in his absence, such error was harmless beyond a reasonable doubt.

The majority correctly concludes that Minn.Stat. § 595.02, subd. 4(c) is facially constitutional in light of *Coy v. Iowa,* —— U.S. ——, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). The statute which requires face-to-face confrontation unless the court "determines that the presence of the defendant * * * would psychologically traumatize the witness so as to render [her] unavailable to testify," clearly meets the *Coy* criteria that an individualized finding of necessity be made.

We are not concerned here with the type of generalized legislative finding at issue in *Coy,* nor does this case involve similar facts. In *Coy,* the victims were 13 years old and unrelated to the defendant. Here, the child is only 4 years old, and the defendant is her father, an authority figure in her life. These special circumstances justify taking the child's testimony in the absence of the defendant. While the Iowa statute in *Coy* was found unconstitutional, the possibility was left open for future exceptions to the confrontation clause "when necessary to further an important public policy." *Coy,* 108 S.Ct. at 2803. This case presents such an exception.

It is important to remember that the confrontation clause does not provide defendants with an absolute right to confront witnesses who testify against them. *See Coy,* 108 S.Ct. at 2803 (O'Connor, J., concurring). Rather, it is a general requirement that may, in appropriate cases, "bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). Indeed, the right to confront witnesses is denied in a variety of unremarkable trial circumstances. For example, whenever a hearsay exception applies or a witness is unavailable or determined incompetent, the defendant cannot confront that witness. The right to confrontation depends on the particular case and may be affected by competing policy considerations.

The Minnesota Legislature has decided that a defendant's right to confront witnesses may be denied in a proceeding where the witness is a child less than 10 years old who must talk about physical abuse or sexual contact. Minn.Stat. § 595.02, subd. 4. Our statute embodies the legitimate state interest of protecting victims of child abuse from the further trauma of testifying in front of their abuser. The statute also aids in the search for truth by making an otherwise unavailable child witness comfortable enough to testify in court and describe the abuse she or he has suffered.

Child abuse cases are more common today than ever before. The United States Supreme Court has said that "[c]hild abuse is one of the most difficult problems to detect and prosecute, in large part because there often are no witnesses except the victim." *Pennsylvania v. Ritchie,* 480 U.S. 39, 60, 107 S.Ct. 989, 1003, 94 L.Ed.2d 40 (1987). In cases of sexual abuse, the dilemma is especially poignant. Young children are asked to identify and describe adult acts which are beyond their knowledge and experience. It is easily understandable why it may be necessary to remove the defendant from the proceeding in order to get the child to speak at all.

When, as here, the witness is a 4-year-old child who was allegedly sexually abused by her father, it is highly probable that his presence in the courtroom would traumatize her. Especially if the child has been told to keep the abuse a secret, she is unlikely to talk about it in front of the accused parent. Often, a certain look from a parent is all that is needed to silence a child. Indeed, 4-years-olds will usually not even be deemed competent to testify or, once on the stand, will "freeze" or be led easily by defense counsel into making inconsistent statements. If a child of such tender years as L.C. is able to tell her story, but unwilling to do so because the defendant is present, it is in the best inter-

ests of the child and society to remove the defendant.

The majority believes that the trial court findings as to whether L.C. was traumatized by the presence of her father were ambiguous and insufficient. Accordingly, says the majority, Minn.Stat. § 595.02, subd. 4(c) was unconstitutional as applied in this case.

The initial finding made by the trial judge prior to appellant's removal admittedly was vague. He found L.C. unavailable, but did not link that unavailability to the presence of appellant as the statute requires. Any ambiguity or defect in that finding was, however, cured prior to trial. The majority opinion ignores the finding of the trial judge at the *Rasmussen* hearing. The judge there expressly concluded that L.C.'s unavailability was, at least, partially due to her father's presence. He stated:

> This court finds that [L.C.] was intimidated by the courtroom setting. That she was embarrased by the very nature of the act she was interrogated about, and that *the presence of Big Russ*, even though it was not a confrontation, *had a chilling effect upon her testimony and her ability to testify.*

(Emphasis added.)

This finding was adequate to fulfill the requirements of Minn.Stat. § 595.02, subd. 4(c). The statute does not require that appellant's presence be the *only* reason the child is traumatized. Indeed, it would be practically impossible for judges, experts or even the child witnesses themselves to isolate a single cause of the child's trauma and unavailability. All the statute requires is a finding that appellant's presence traumatized L.C. to the point of making her unavailable. The trial judge made that determination, and it is clearly supported by the evidence. *See State v. Burns*, 394 N.W.2d 495, 497 (Minn.1986) (trial record can cure inadequacy of pretrial hearing).

It is true that the trial judge did not hear expert testimony on whether L.C. was traumatized by the presence of her father, however, such testimony is not required. This court has previously noted that a parent is the "ultimate expert" with respect to a child, *State v. Myers*, 359 N.W.2d 604, 611 (Minn.1984), and before removing appellant, the trial judge questioned L.C.'s foster mother. She said that L.C. appeared more nervous than when she had testified at the competency hearing. The judge also observed that L.C. was more nervous during the taping of her trial testimony than she had been when appellant was not present. She had also previously been willing to talk about the incident outside the presence of appellant.

Most persuasively, L.C. had been told by her father not to tell anyone what had happened. There is also testimony in the record from L.C.'s foster mother that L.C. had been afraid to visit Big Russ over the preceding months. Moreover, this was the first time in 5 months that L.C. had seen her father. These facts all clearly support a finding that L.C. was traumatized by the presence of her father and not just the courtroom setting. The propriety of the trial judge's determination became especially apparent once her father was removed and L.C. admitted that he "punched" her "down there."

The trial court's decision to remove appellant is not based, as the majority alleges, on an impermissible presumption that his presence would traumatize L.C., but is an individualized finding based on the child's age, relationship with the accused, observed behavior during the testimony, past and present fear of the accused and testimony from the child's foster mother.

It is important to note that, in examining whether the record supports the trial court's finding that L.C. was traumatized by the presence of her father, the majority opinion ignores the standard of review for such a factual determination. This court cannot reverse a specific finding of the district court unless it is clearly erroneous. *State v. Linder*, 268 N.W.2d 734, 735 (Minn.1978). Deference must be given to the fact-finder, and the majority fails to do so.

It is difficult to imagine what additional evidence the majority would require to find that a defendant's presence would traumatize a child witness. Asking the traumatized child herself if she is afraid of the

accused is unlikely to lead to the truth. If we must wait for the child to announce her trauma or an expert to declare that its cause is the defendant's presence beyond a reasonable doubt, the statute will become meaningless. The trial judge's finding here was in accordance with the statutory requirement and supported by ample evidence.

We must also keep in mind that this court has "the primary responsibility under the separation of powers doctrine for the regulation of evidentiary matters * * *." *State v. Burns*, 394 N.W.2d 495, 498 (Minn. 1986); *see also State v. Dana*, 422 N.W.2d 246, 249 (Minn.1988); *State v. Mitjans*, 408 N.W.2d 824, 830 (Minn.1987). The mere fact that statutory procedures or standards may not have been followed precisely here is not conclusive. This is especially true with regard to the use of the one-way video connection used once appellant was removed from the courtroom. *See* Maj.Op. at 271 n. 1. Additionally, there was no objection to the procedure when it was used; therefore, any allegation of error was waived. *See, e.g., State v. Martin*, 294 Minn. 469, 199 N.W.2d 419 (1972) (defendant not allowed to raise a jury instruction error for first time at appeal).

After deciding that the confrontation clause was violated by removing appellant during L.C.'s testimony, the majority proceeds to examine whether the error was harmless beyond a reasonable doubt. Even if we were to conclude, on the basis of the entire record, that the absence of the appellant during the second part of L.C.'s testimony violated his right of confrontation under *Coy*, it does not necessarily follow that his conviction should be reversed. In *Coy*, the U.S. Supreme Court acknowledged the possibility that error in denying the defendant face-to-face confrontation may not be necessarily prejudicial. The Court said:

> The State also briefly suggests that any Confrontation Clause error was harmless beyond a reasonable doubt under the standard of *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). We have recognized

that other types of violations of the Confrontation Clause are subject to that harmless error analysis, see *e.g., Delaware v. Van Arsdall*, 475 U.S., [673], at 679, 684, 106 S.Ct., [1431], at 1436, 1437[, 89 L.Ed.2d 674], and see no reason why denial of face-to-face confrontation should not be treated the same. An assessment of harmlessness cannot include consideration of whether the witness's testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation; such an inquiry would obviously involve pure speculation, and harmlessness must therefore be determined on the basis of the remaining evidence. The Iowa Supreme Court had no occasion to address the harmlessness issue, since it found no constitutional violation. In the circumstances of this case, rather than decide whether the error was harmless beyond a reasonable doubt, we leave the issue for the court below.

*Coy v. Iowa*, — U.S. —, 108 S.Ct. 2798, 2803, 101 L.Ed.2d 857 (1988). Less speculation is involved here than in *Coy* because L.C. testified first with appellant in the room and then outside his presence. While not in the defendant's presence, she testified that she remembered telling her foster mother some things defendant did to her, but could not remember what those things were. After defendant was removed, she stated that defendant had "punched" her "down there," pointing to her groin area, when they were in the bathroom together.

Nevertheless, the majority opinion states: "The weight the jury would give to her prior unsworn, out of court statements is simply not known, and thus we cannot say that the error in removing appellant was harmless beyond a reasonable doubt." Maj.Op. at 275. If this were the proper analysis, harmless error could never be found because, under that standard, a reviewing court would need to know the jury's thoughts. Instead, for there to be harmless error, it must be determined that the record contains overwhelming evidence of guilt and, thus, the evidence admitted as a result of the constitutional violation was merely cumulative and could not have

played a significant role in the conviction. *See State v. Forcier,* 420 N.W.2d 884, 886–87 (Minn.1987). L.C.'s testimony that appellant punched her was not prejudicial given the other evidence of guilt; therefore, any error was harmless beyond a reasonable doubt.

Except for L.C.'s statement that appellant punched her, the other evidence at trial consisted primarily of the out-of-court statements that L.C. made to her foster mother, Lonnie Payne, and Dr. Levitt. The majority recognizes that Minn.Stat. § 595.02, subd. 3 permits the use of these hearsay statements as substantive evidence in child sexual abuse cases, but suggests that the trial court erred by admitting the statements.

Minn.Stat. § 595.02, subd. 3 requires that, prior to admitting the hearsay statements in this case, the court must conduct a hearing and find that "the time, content, and circumstances of the statement and the reliability of the person to whom the statement is made provide a sufficient indicia of reliability * * *." Minn.Stat. § 595.02, subd. 3(a) (1988). At the *Rasmussen* hearing, the trial judge made the necessary preliminary finding of reliability and admitted the statements. He set out thorough and detailed findings which clearly meet the statutory requirement as well as comport with the analysis recommended by the majority:

> The Court finds that the out-of-court statement made by [L.C.] to Diane Schrodel [sic] on February 24th and 25th of 1987 and July 12th of 1987, and the statements made by [L.C.] to Investigator Payne made on February 25, 1987 shall be received in evidence pursuant to Minnesota Statute 509.02 Sub. 3. The Court finds that the content and circumstances of the statement provides sufficient indicia of a reliability for the following reasons.
>
> That [L.C.]'s statement on February 24th to Mrs. Schroedel [sic] which gave rise to further inquiry in the matter to the effect that her bottom here [sic] was clearly a spontaneous nonsolicited statement. Secondly there is no evidence to

suggest that [L.C.] had any reason to make up or fabricate such a tale. Thirdly, it is extremely unlikely that [L.C.] could have made up such a story, that the acts she has stated had not in fact occurred. It would be—would appear that would be beyond her imagination and experiences in life. Fourthly, there is no testimony to the effect that [L.C.] is a person who is accustomed to fabricating or making up stories or fantasizing the testimony of Mrs. Schrodel [sic] is to the contrary. Fifth, the statement made and the circumstances surrounding the time of there [sic] being made does not indicate that they are the result of coaching or solicitation. Nor were they the result of unfairly framed or leading or suggestive questions. There is no testimony to suggest that [L.C.] would have any reason to want to hurt the defendant or any reason that she would have to fabricate or make up such a story.

> Lastly, the defendant had the opportunity to commit the offenses with which he is charged. The Court further finds that Diane Schrodel [sic] is a reliable person. The Court finds that her testimony was candid and believable. The Court does not find any evidence to suggest that she had any reason or motive of any kind to testify falsely or to be motivated to cause harm to this defendant.

> The Court further finds that there is nothing in the testimony to suggest that Mrs. Schrodel [sic] asked unfairly leading questions or that she attempted to coach or influence the testimony or the statements made by [L.C.]

> The Court likewise finds that Investigator Payne is a reliable witness. The Court finds that her testimony is credible. The circumstances surrounding her interview with the child was [sic] fair and reasonable and the interrogation was fairly conducted. The Court has in mind the defendant's position that the statements should not be admitted because of inconsistencies in [L.C.]'s trial testimony and her testimony in the out-of-court statement. It has been indicated [L.C.]'s testimony for trial was available to the

Court. It hadn't been, it having been taken before Judge Shumaker on August 18, 1987. It is true that the most aggregious [sic] acts that [L.C.] stated in her out-of-court statement were not given in her video tape of trial testimony. The Court has carefully viewed [L.C.]'s appearance and demeanor on the video of her trial testimony. It is apparent to this Court that in neutral type of questions of [L.C.], [she] was relaxed and responsive. The many questions zeroed in on Big Russ or the sexual conduct aspects of the matter that she became obviously embarrassed. The Court noticed she would look down, would look away, would not answer or would be evasive in respect to the questions. This does not persuade this Court that her out-of-court statement were [sic] therefore untrue or fabricated.

\* \* \* \* \* \*

The Court in conclusion finds that the out-of-court statement does have sufficient indicia of reliability and will be received and it will be for the jury to determine their believability, and if there are such inconsistencies that shall cause a jury to reject her out-of-court statements or not believe them.

The admissibility of evidence is a preliminary question to be determined by the court. Minn.R.Evid. 104. Additionally, the trial court's threshold finding of reliability can only be set aside if this court finds that it was an abuse of discretion. *State v. Gustafson,* 379 N.W.2d 81, 84 (1985). The inconsistencies in L.C.'s story at different times are neither troublesome nor a reason to exclude the out-of-court statements. It is easily understandable why a child who is a victim of sexual abuse, and reluctant to discuss the incident at all, may speak more or less freely in different settings to different people. The fact that L.C. is inconsistent about the details of the abuse does not mean that it did not occur. Those inconsistencies should not preclude the admission of evidence that there was abuse. I agree with the trial judge that the out-of-court statements were reliable and alone support appellant's conviction beyond a reasonable doubt.

The confrontation clause was not violated in this case. There was an adequate finding made that appellant's presence traumatized L.C. so as to make her unavailable as a witness. Even if the judge did not say the "magic words" the majority wants to hear, the finding is clearly made and supported by a preponderance of the evidence. The majority's harmless-error analysis fails by discounting the out-of-court statements of Diane Schroedl, Lonnie Payne and Dr. Levitt as unreliable without considering their impact. Because the trial court did not abuse its discretion by finding those statements reliable, they were properly admitted and make any constitutional violation harmless beyond a reasonable doubt.

In conclusion, I do not quarrel with the proposition that every defendant is entitled to a fair trial and that constitutional protections ensure that defendants will have the right to confront witnesses; however, because the right to confront witnesses is a general proposition only, the rule must be interpreted and modified in light of the facts of each particular case. In this case, the witness was 4 years of age. While the court decided to admit her testimony, the conditions for permitting her to testify must surely be different than those for a fully mature and competent adult. Here, it was clear from the record that L.C.'s father had an enormous influence over her, and his presence caused her to be nervous and silent. While it is true that the prosecutor and the judge could have been more procedurally exact, it is also true that one is entitled to a fair trial, not a perfect trial. I do not believe that the defendant is in a position to claim that he was denied a fair trial.

While it is true that constitutional rights cannot be eroded due to the expediency of the times, it is also true that society must attempt to eliminate child abuse. Thus, the rules of evidence must be interpreted carefully to protect the rights of the defendant, but also to allow the truth to prevail. To do otherwise would result in prosecutors being reluctant to prosecute child abuse

cases. I believe this case meets the required balance of being fair to the defendant while protecting the child victim. I would affirm.

COYNE, Justice (dissenting).

I join in the dissent of Justice Yetka, but write to emphasize my agreement with the majority opinion of Justice Keith that the hearing on the motion to remove defendant from the room was not the sort of hearing contemplated by the statute. However, as the dissent makes clear, as a reviewing court we are not narrowly restricted to the record made at the hearing on the motion to remove. *State v. Burns*, 394 N.W.2d 495, 497 (Minn.1986). A review of the entire trial record establishes that special circumstances justifying defendant's removal were present. The record on appeal shows that the victim was only four years old; that defendant, as her father, was in a position of authority over her and had warned the victim that she should not tell anyone about the abuse; that in the latter days of the abuse the victim had become frightened about visiting defendant; that the victim had not seen defendant in five months; and that, in the opinion of her foster mother, the victim was nervous and her nervousness was interfering with her ability to remember or recount the abuse. This record bears out the child's functional unavailability to testify in defendant's presence and justifies his removal despite the trial court's failure to specifically find that this four-year-old child was "psychologically traumatized." I also agree with the dissent that the record and our cases, including *State v. Dana*, 422 N.W.2d 246, 248–51 (Minn.1988), and *State v. Burns*, 394 N.W.2d 495, 497–98 (Minn.1986), support the trial court's admission of the extrajudicial statements of the victim. I agree with the majority opinion that it was unnecessary for the prosecutor to stop the video tape and inform the jury that defendant had been removed from the room at that point, but I am satisfied that defendant received a fair trial, that the evidence of his guilt was strong, and that his conviction therefore should be affirmed.

WAHL, Justice (dissenting).

I join both the dissents of Justice Yetka and Justice Coyne. I write only to emphasize the narrowness of the Minnesota Statute's interference with defendant's constitutionally protected right to confrontation. Although the defendant was removed, the statute preserves his rights to cross-examination and to have the jury evaluate the witness's demeanor in person. The statute addresses the unique difficulties inherent in eliciting testimony regarding sexual abuse from young children, which the U.S. Supreme Court has indicated is appropriate and consistent with its holding in *Coy v. Iowa*, —— U.S. ——, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988).