*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0646**

Gregory Levon Spraggins, Jr., petitioner,
Appellant,

vs.

State of Minnesota,
Respondent

**Filed December 7, 2015
Affirmed
Stauber, Judge**

Rice County District Court
File No. 66CR123219

Cathryn Middlebrook, Chief Appellate Public Defender, Bridget K. Sabo, Assistant State Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Fossum, Rice County Attorney, Terence Swihart, Assistant County Attorney, Faribault, Minnesota (for respondent)

Considered and decided by Stauber, Presiding Judge; Smith, Judge; and Minge, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

In this postconviction appeal, appellant challenges his conviction of gross-misdemeanor malicious punishment of a child. He argues that the district court abused its discretion by admitting the child's out-of-court statements and by admitting other "irrelevant and prejudicial" evidence that deprived him of a fair trial. We affirm.

**FACTS**

On the morning of December 3, 2012, P.S.[1] arrived at school and told his teacher that his mother's boyfriend, appellant Gregory Levon Spraggins, Jr., had hit him with a belt and put his hands around P.S.'s neck. Rice County child protection assessment worker Jennifer Goodwin and police officer Joshua Alexander interviewed P.S. later that day. P.S. told them that because he had failed to clean out the dog's kennel, Spraggins hit him two or three times on his back with a belt, picked him up by the throat, and threw him onto a couch.

Spraggins also came to school that afternoon to "see how P.S. was doing," telling his teacher that P.S. had "had a tough morning." Detective Matthew Long, one of three officers who later went to P.S.'s home to interview Spraggins, said that when asked about the incident, Spraggins "immediately produced the belt," "made a statement about not being able to punish kids, and said that this was 'all over one whoop that he gave to

---

[1] P.S. has an "autism spectrum disorder, [attention deficit/hyperactivity disorder], and several learning disabilities," as well as a history of behavior problems, but he was found competent to testify at trial.

[P.S.].'" Spraggins told the officers that he had used the belt on P.S. previously but denied using it on P.S. that morning.

Spraggins was charged with malicious punishment of a child in violation of Minn. Stat. § 609.377, subd. 2 (2012), and domestic assault in violation of Minn. Stat. § 609.2242, subd. 1 (2012). The case proceeded to a bench trial.

P.S.'s trial testimony was more limited than the statements he had made earlier to Goodwin and Alexander. He described how Spraggins "got the belt out and . . . spanked me" "once [on the] butt . . . and once on the back," but he did not "remember the other spots." P.S. described the belt and when shown Spraggins' belt said: "That's the belt right there." During cross-examination, P.S. agreed that his testimony during direct examination reflected everything that happened between him and Spraggins on the date of the offense. Photos of P.S. taken on the date of the offense that showed red marks on his body were received into evidence and were consistent with his trial testimony.

Spraggins and P.S.'s mother, J.S., testified for the defense. J.S. testified that Spraggins had used a belt to discipline P.S. about a year-and-a-half before the current offense, but they talked about it and Spraggins agreed not to do it again. Spraggins testified that he "swatted" P.S. with his hand on P.S.'s buttocks after P.S. refused to clean up the dog kennel after being asked five times to do so. Spraggins denied using excessive force, but he admitted that he wore the belt around his neck "for show" to "intimidate" P.S. and his siblings. The district court specifically found J.S.'s and Spraggins' testimony not credible, and found P.S.'s testimony credible, because his story remained consistent throughout the proceedings.

The district court found Spraggins guilty of malicious punishment of a child. Spraggins did not file a direct appeal but later petitioned for post-conviction relief, which the district court denied. Spraggins now asserts that the district court abused its discretion by admitting into evidence the out-of-court statements made by P.S. to Goodwin and Alexander, and "by admitting irrelevant and prejudicial evidence that the personal care attendant who worked with P.S. felt threatened by Spraggins and did not like working with him."

## DECISION

Appellate courts "review postconviction decisions under the abuse-of-discretion standard of review." *Davis v. State*, 784 N.W.2d 387, 390 (Minn. 2010). On appeal, the "[f]actual determinations of the postconviction court are upheld if they are supported by sufficient evidence," and "[i]ssues of law receive de novo review." *Id.*

Spraggins argues that the district court abused its discretion by admitting hearsay testimony of what P.S. said to Goodwin and Alexander when they interviewed him. While P.S. testified at trial that Spraggins used a belt to strike him on the date of the offense, Alexander testified that P.S. told him "there are multiple different belts that are used on him" and testified about other objects that were used to strike him on other occasions. Further, while P.S. did not testify that Spraggins had picked him up by his throat or thrown him on the couch, both Alexander and Goodwin testified to these occurrences. The district court admitted the evidence over Spraggins's objection. In its postconviction order, the district court concluded that it had erred in admitting the evidence, but ruled that the evidence was harmless because it did not substantially

4

influence the factfinder to convict, noting that the factfinder was a judge rather than a jury and therefore likely less likely to be influenced by the error.

Hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Minn. R. Evid. 801(c). Hearsay is generally inadmissible. Minn. R. Evid. 802. P.S. testified that he was hit once on the back and once on the buttocks. The testimony of Goodwin and Alexander also described P.S. being choked and thrown, and their testimony was inconsistent with P.S.'s testimony. As such, their testimony was hearsay that should not have been admitted at trial. Further, the evidence was not admissible under the residual hearsay exception because that exception requires the evidence to be "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." *See* Minn. R. Evid. 807. Here, P.S. was available to testify.[2]

But a defendant is entitled to a new trial only if erroneously admitted evidence was sufficiently prejudicial. An error is harmless if there is "no reasonable probability that the wrongfully admitted evidence significantly affected the verdict." *State v. Robinson*, 718 N.W.2d 400, 407 (Minn. 2006) (quotation omitted). Here, the district court specifically found P.S.'s testimony credible, and his testimony was corroborated by

---

[2] While the postconviction court found that P.S.'s out-of-court statements were as probative as his trial testimony, this finding is contrary to basic tenets of criminal law. *See State v. Conklin*, 444 N.W.2d 268, 276 (Minn. 1989) (stating that prohibition against admission of hearsay statements "*protect*[s] *the integrity of the factfinding process by ensuring that only reliable evidence will be used against a defendant.* Thus hearsay can be used against a criminal defendant at trial only if its use is necessary, and only if the hearsay evidence is demonstrably reliable.") (Emphasis added.)).

5

physical evidence of P.S.'s injuries.  The record supports the district court's finding that P.S.'s testimony concerning the spanking with the belt was consistent, and that testimony alone is sufficient to affirm Sprragins' malicious punishment conviction.

In addition, the district court did not rely significantly on the hearsay evidence in reaching its decision.  The district court relied only on the fact that Spraggins "intentionally hit the child, P.S., with a belt on December 3, 2012" in determining that the state had met its burden of proof on the malicious punishment charge.  The error in admission of the hearsay evidence was, therefore, harmless and did not affect the verdict.

Spraggins next argues that the district court abused its discretion or plainly erred by admitting or eliciting irrelevant evidence at trial from P.S.'s personal-care attendant, Carol Musel, that improperly called his character into question.  This evidence includes "that P.S. behaved well with Musel, that Musel disapproved of the household, that Spraggins scared Musel and P.S., that Spraggins did not maintain basic cleanliness[,] and that Musel felt threatened and uncomfortable with Spraggins. . . ."  Some examples from Musel's testimony include: "He [Spraggins] scares me[;]" P.S.'s behavior was "phenomenal" after he started living with Musel in December 2012; even when Spraggins was the only adult in the home, he was not in charge of the children; P.S. could not be in the same room with Spraggins when she was working with P.S.; and Spraggins "got in my face and made me very threatened" when she suggested that another child's bottle of curdled milk needed washing.

Spraggins objected to some of Musel's testimony on relevancy grounds, and the district court sustained most objections, struck some of her testimony, and directed the

6

focus of her testimony to include the period during which P.S. was living in his mother's home. When evidence is erroneously admitted at trial, this court reviews for harmless error. *State v. Vang*, 774 NW.2d 566, 576 (Minn. 2009).

Even if the evidence challenged by Spraggins was erroneously admitted, any error was harmless. The district court did not rely on any of the disputed evidence in reaching its decision and specifically relied on only properly admitted evidence. Further, this case was a bench trial, and "[t]he risk of unfair prejudice to [a defendant tried by the court] is reduced because there is comparatively less risk that the district court judge, as compared to a jury of laypersons, would use the evidence for an improper purpose or have his sense of reason overcome by emotion." *State v. Burrell*, 772 N.W.2d 459, 467 (Minn. 2009). Under these circumstances, Spraggins cannot satisfy either the harmless error standard, and the postconviction court did not abuse its discretion by denying him relief.

**Affirmed**.